UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————

BILL & TED'S RIVIERA, INC., and
PARTITION STREET PROJECT, LLC,
on behalf of themselves and all other similarly
situated individuals,

                         Plaintiffs,

                        -against-

ANDREW M. CUOMO, LETITIA JAMES,
GREELEY T. FORD, EMPIRE STATE
DEVELOPMENT CORPORATION,
NEW YORK STATE LIQUOR AUTHORITY

                        Defendants.
———————————————————————

**VERIFIED CLASS
ACTION COMPLAINT
AND JURY DEMAND**

Civil No.   1:20-cv-1001 (FJS/TWD)

## NATURE OF ACTION

1.     This is a civil rights action for legal and equitable remedies challenging certain executive orders issued by defendant New York State Governor Andrew M. Cuomo ("Cuomo") and enforced by him and defendants New York State Attorney General Letitia James ("James"), New York State Liquor Authority Commissioner Greeley T. Ford ("Ford") and the New York State Liquor Authority, and also challenging certain rules and regulations promulgated by defendant Empire State Development Corporation in connection with the executive orders.

2.     This action seeks declaratory and injunctive relief for deprivations sustained by Plaintiffs and for violations committed by said Defendants — while acting under

color of state law — against Plaintiffs' rights as guaranteed by the Fourteenth Amendment of the United States Constitution.

## **INTRODUCTION**

3.     Marriage is a universal rite of passage with roots in religious and cultural traditions dating back to time immemorial.  The concept of marriage as a fundamental right is deeply engrained in our jurisprudence and, though it has evolved and adapted with the times, its essential sanctity never has been compromised or besmirched by our court system.

4.     The same cannot be said for the executive branch of the State of New York.  In an unprecedented abuse of power, Defendants have exploited the COVID-19 pandemic to promulgate and enforce a multitude of executive orders in rapid succession over the course of the past three months.  These executive orders have been issued in haphazard and dictatorial fashion without the checks and balances assured by the New York State constitution. The legislative branch has been effectively neutered and relegated to the sidelines.

5.     Defendants have imposed and selectively enforce orders in pursuit of the State's stated goal of "social distancing" and have caused a "lockdown" and unprecedented interruption of virtually every aspect of the social, political, religious and economic life of New York State's over 19 million residents.  Under the pretext of public health, the restrictions are imposed widely and ostensibly universally.  However, upon scrutiny, it is revealed that the executive orders leak like a sieve, and Defendants have carved out numerous exceptions in an arbitrary and capricious manner according to their own political preferences and value judgments.

6.      Defendants have enforced their "lockdown" by threat of criminal prosecution and administrative punishment, including $1000 per-day fines for the novel offense of violating Cuomo's "Social Distancing Protocol" ("SDP").  Further, restaurants and food service establishments are subject to summary suspension or revocation of their liquor licenses and exorbitant fines of up to $10,000 per violation.

7.      As alleged more particularly below, Cuomo's ever-evolving official application of his executive orders and SDP have specifically limited "non-essential gatherings" to "fifty or fewer individuals" provided that "the location of the gathering is in a region that has reached Phase 4 of the State's reopening, and provided further that social distancing, face covering, and cleaning and disinfection protocols required by the Department of Health are adhered to."

8.      On its face, this executive order prohibits all gatherings, including weddings, of more than fifty people.

9.      However, Defendants have riddled this executive order with a panoply of far-reaching exceptions, including thousands upon thousands of exemptions issued to restaurants across the state allowing them to serve patrons up to 50% of their regular occupancy limit.

10.     Yet, the cap on weddings is enforced despite the fact that the same restaurants where a wedding would take place are explicitly permitted to serve patrons up to 50% of their regular occupancy limit, which, common to each of the members of the proposed class, is in excess of 50 people.  For example, a restaurant with a regular capacity of 400 patrons may lawfully – and, according to New York State, safely – serve 200 people at a time in compliance

with the executive orders, but it would be limited to an arbitrary cap of 50 people if it were to host a wedding dinner at the same location and under the same rules and protocols.

11.     Further, Defendants have allowed for additional exceptions to the 50-person cap on "non-essential" gatherings by allowing graduation ceremonies to host up to 150 people, as well as by allowing the operation of bowling alleys, museums, and gyms, all in excess of 50 patrons at a time.  This is allowed despite the mingling that takes place at gyms and museums, or the sporadic enthusiasm and exuberance expressed by a bowlers, graduates, and gym-users.

12.     The cap on weddings also is enforced despite the fact that Defendants regularly permit and encourage closely packed gatherings of hundreds and thousands of people to protest the wrongful death of George Floyd at the hands of a police officer.  These protests have been permitted across every major city in the State of New York and many smaller towns and villages since George Floyd's death on May 25, 2020.

13.     Favored businesses, entities, and activities, as well as favored mass demonstrations such as those over the death of George Floyd, are exempt from the challenged gathering limits, while Defendants irrationally and capriciously continue to forbid weddings from taking place under the same rules in effect for restaurant dining.

## **PARTIES**

14.     Plaintiff Bill and Ted's Riviera, Inc., ("Riviera") is a New York State corporation with offices located at 200 East Shore Drive, Massapequa, New York.  Riviera operates the Riviera at Massapequa which consists of a restaurant and event space with a regular maximum capacity of 353 people.  As a restaurant, pursuant to guidance currently in effect in

New York, Riviera is able safely to accommodate 176 members of the general public. However, under Executive Order 202.45, Riviera is limited to weddings of no more than 50 people at a time in the same restaurant and same event space.

15.     Plaintiff Partition Street Project LLC ("Partition Street") is a New York State limited liability company with offices located at 319 Main Street, Saugerties, New York. Partition Street owns and operates "Diamond Mills" which consists of a ballroom with regular maximum capacity of 400 people and a tavern with regular maximum capacity of 176 people. As a restaurant, Partition Street is able safely to provide dinner service for up to 200 members of the general public in the ballroom, and 88 members of the general public in the tavern. However, under Executive Order 202.45, Partition Street is limited to weddings of no more than 50 people at a time even when hosted in the same tavern or the same ballroom.

16.     Defendant Cuomo was and is the Governor of the State of New York and was and is acting under color of state law, and in his official capacity, at all times relevant to the allegations made by Plaintiffs herein. Cuomo's official place of business is the State Capitol Building, City of Albany, State of New York. Cuomo is sued herein in his official capacity.

17.     Defendant James was and is the Attorney General of the State of New York. James was and is acting under color of state law, and in her official capacity, at all times relevant to the allegations made by Plaintiffs herein. James' principal place of business is the State Capitol Building, City of Albany, State of New York. James is sued in her official capacity.

18.     Defendant Ford was and is the Commissioner of the New York State Liquor Authority and was and is acting under color of state law, and in his official capacity, at all

times relevant to the allegations made by Plaintiffs herein.  Ford's official place of business is

80 South Swan Street, Albany, New York.

19.     Defendant Empire State Development Corporation ("ESD") is a

New York State Public Benefit Corporation with principal offices located at 633 Third Avenue,

City of New York, State of New York.

20.     Defendant New York State Liquor Authority ("SLA") is an agency of the

of the New York State government with offices located at 80 South Swan Street, Suite 900,

Albany, New York.  The SLA is a lead agency in Cuomo's multi-agency task force to enforce

coronavirus-related regulations at bars and restaurants.

## JURISDICTION AND VENUE

21.     This action implicates federal questions under the Fourteenth Amendment

to the United States Constitution and pursuant to Federal Law, 28 U.S.C. §§ 1920, 2201 and

2202, as well as 42 U.S.C. §§ 1983 and 1988.

22.     This Court has jurisdiction over these claims pursuant to 28 U.S.C.

§§ 1331, 1343 and 5 U.S.C. § 701, et seq.

23.     This Court has authority to grant the requested injunctive relief pursuant to

28 U.S.C. § 1343 (3) and 42 U.S.C. § 1983, declaratory relief pursuant to 28 U.S.C. §§ 2201,

2202, and Plaintiffs' demand for costs, including reasonable attorney's fees, pursuant to

42 U.S.C. § 1988, 28 U.S.C. § 1920, and F.R.C.P. Rule 23.

24.    Venue is proper in the Northern District pursuant to 28 U.S.C. §1391, as at least one Defendant resides in this District and all Defendants reside within the State of New York.

## CLASS ACTION ALLEGATIONS

25.    Named Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2) on behalf of themselves and a proposed class of :

> All restaurant, banquet, catering, and dining facilities in New York State with a maximum occupancy greater than 100 that follow the "Interim Guidance for Food Services During the COVID-19 Public Health Emergency," yet are prohibited from hosting wedding dinners for more than 50 individuals under Executive Order 202.45.

26.    This proposed class is so numerous that joinder of all members is impractical.  Upon information and belief, the proposed class contains well in excess of one thousand members.

27.    Although not required in order to certify a class pursuant to Fed. R. Civ. P. 23(b)(2), there are questions of fact and law common to the proposed class that predominate over any questions affecting only the named Plaintiffs.  Particularly, whether the Defendants' limitation on non-essential gatherings to 50 people arbitrarily and in violation of the Fourteenth Amendment discriminates against Plaintiffs because they and other restaurants are permitted to host significantly more people when functioning as a restaurant, even though the dining for both the restaurant and the weddings occur in the same venue with the same social-distancing and other hygienic precautionary measures being required.

28.     The named Plaintiffs' claims are typical of the claims of the proposed class.  All the named Plaintiff class representatives have been prohibited from hosting weddings in excess of 50 people in attendance under penalty of civil and/or criminal sanction pursuant to Defendants' executive orders and enforcement thereof.

29.     The named Plaintiffs will adequately and fairly protect the interests of all the members of the proposed class because they have the requisite personal interest in the outcome of this litigation, have no interest antagonistic to others in the proposed class, and they are represented by Rupp Baase Pfalzgraf Cunningham LLC, whose attorneys are experienced in class action and civil rights litigation.

30.     Declaratory and injunctive relief is appropriate with respect to the proposed class as a whole because Defendants have acted on grounds generally applicable to the proposed class as a whole.

## STATUTORY AND REGULATORY SCHEME

31.      On March 7, 2020, Cuomo issued Executive Order 202 ("Order 202") which, in relevant part, declared a State Disaster Emergency for the State of New York based on the presence of travel-related cases and community transmission of COVID-19 having been documented in the State.  *See* compilation of Executive Orders attached as Exhibit "A" at 2.

32.     All of the orders are premised on Order 202's original proclamation that "travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue."  *Id.*

33.     The scheme of the orders is being enforced by "[a]ll enforcement mechanisms by state or local governments" under Section 12 of the Public Health Law, and by

$1,000 fines for violation of the SDP set forth in Cuomo's unilaterally dictated "New York on Pause" plan ("PAUSE Plan").  *See* New York State on PAUSE 10 Point Plan attached as Exhibit "B."

34.     On July 23, 2020, Cuomo announced the formation of a multi-agency task force ("Cuomo's Task Force"), spearheaded by Defendant SLA, to investigate and shut down establishments not complying with coronavirus related orders.  Cuomo's Task Force also includes investigators from the Department of Health, New York State Police, Department of Financial Services, Department of Motor Vehicles, Department of Taxation and Finance, the New York State Insurance Fund, and the Department of Agriculture and Markets.

35.     Order 202 was followed by a flurry of executive orders targeting all social, political, religious, and business activity in the State of New York.  The only authority cited for this massive undertaking is Section 29-a of Article 2-B of the Executive Law, Direction of State Agency Assistance in a Disaster Emergency, which makes no provision whatsoever for limiting or prohibiting social, political, religious, and business activities of the general population.

36.     On March 12, Cuomo issued Executive Order 202.1, canceling or postponing any "gathering" of over 500 individuals.  Exhibit "A" at 5.

37.     On March 16, the ban on gatherings was reduced to 50 persons pursuant to executive Order 202.3.  *Id.*

38.     On March 23, Cuomo decreed a total ban on all "non-essential gatherings of any size for any reason."  *Id.* at 29.

39.     On May 14, Cuomo decreed in Order 202.31 that he was continuing, until May 28, 2020, the "postponement or cancellation of all non-essential gatherings of individuals of

any size for any reason (e.g. parties, celebrations, games, meetings or other social events). . . ." *Id.* at 70.

40.     Order 202.31 further decreed that "[a]ll enforcement mechanisms by state or local governments shall continue to be in full force and effect until June 13, 2020 unless later extended or amended by a future Executive Order." *Id.* Order 202.31 thus maintains all local law enforcement agencies as agents for the enforcement of the Orders, including SDP and gathering limitations with $1,000 fines and administrative consequences for violations. Further, Cuomo's Task Force — led by Defendant SLA— is empowered to issue fines of up to $10,000 per violation and a permanent revocation of a violator's liquor license.

41.     On May 21, pursuant to Executive Order 202.32, Cuomo slightly relaxed the ban on "non-essential gatherings" pursuant to Order 202.10 by permitting "a gathering of ten or fewer individuals for any religious service or ceremony, or for the purposes of any Memorial Day service or commemoration, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to." *Id.* at 73.

42.     On May 22, pursuant to Executive Order 202.33, Cuomo granted general "permission" for "any non-essential gathering of ten or fewer individuals, for any lawful purpose or reason, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to." *Id.* at 75.

43.     On May 28, pursuant to Executive Order 202.34, Cuomo continued the "required postponement, cancellation, or restriction on size of all non-essential gatherings of more than ten individuals," but allowed the "Phase One reopening" for "non-essential businesses" in numerous regions. *Id.* at 76.

44.     On June 2, pursuant to Order 202.36, Cuomo decreed "[a]ny region that meets the prescribed public health and safety metrics as determined by the Department of Health for Phase One reopening may allow outdoor, low-risk recreational activities and businesses providing such activities, as determined by Empire State Development Corporation, to be permitted to operate, in accordance with Department of Health guidance." *Id.* at 81

45.     Order 202.36 maintained Cuomo's restriction of ten or fewer persons on anything other than "drive-ins" for religious service. *Id.* At the same time, certain business and activities were permitted to welcome unlimited in-person gatherings including state beaches, construction, banking, government services, news media, manufacturing, certain retail, and services in support of these industries. *Id.*

46.     On June 15, pursuant to Order 202.42, Cuomo again slightly relaxed the ban on "non-essential gatherings" pursuant to Order 202.10 to "allow twenty-five (25) or fewer individuals, for any lawful purpose or reason, provided that the location of the gathering is in a region that has reached Phase 3 of the State's reopening, and social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to. *Id.* at 87.

47.     Executive Order 202.45, issued June 26, 2020, modified previous orders and "[allowed] gatherings of fifty (50) or fewer individuals for any lawful purpose or reason, so long as any such gatherings occurring indoors do not exceed 50% of the maximum occupancy for a particular indoor area, and provided that the location of the gathering is in a region that has reached Phase 4 of the State's reopening, and provided further that social distancing, face

covering, and cleaning and disinfection protocols required by the Department of Health are adhered to." *Id.*

48.     As restaurants and food service establishments, Plaintiffs are subject to certain rules promulgated by Defendants published on June 26, 2020.  *See* "Interim Guidance for Food Services During the COVID-19 Public Health Emergency attached as Exhibit "C."  The "Interim Guidance for Food Services During the COVID-19 Public Health Emergency" ("Interim Guidance") provides "[n]o food service operation can occur without meeting the following minimum State standards."  The Interim Guidance goes on to detail 13 pages of regulations and standards in areas such as Physical Distancing, Gatherings in Enclosed Spaces, Workplace Activity, Movement and Commerce, Kitchen Area, Protective Equipment, Hygiene, Cleaning and Disinfection, Phased Reopening, Communications Plan, Screening and Testing, Tracing and Tracking, and Employer Plans.  These rules are applicable whether Plaintiffs are providing restaurant service to the general public or hosting a wedding celebration.

49.     Under the Interim Guidance, Plaintiffs are required, inter alia, to meet the following standards and rules:

a.   Limit indoor occupancy to no more than 50% of maximum occupancy, exclusive of employees;

b.   All indoor and outdoor tables with seating for customers must be separated by a minimum of 6 ft. in all directions.  Wherever distancing is not feasible between tables, physical barriers must be enacted between such tables.  Barriers must be at least 5 ft. in height and not block emergency and/or fire exits;

c.   Employees must wear an acceptable face covering at all times;

d.  Patrons must wear face coverings at all times, except while seated; provided that the patron is over the age of 2 and able to medically tolerate such covering;

e.  Clearly signal 6 ft. spacing in any lines for customers waiting to order, pick-up food, be seated, or use the restroom, as well as in any pick-up or payment location;

f.  Designate entrances/exits for customers and separate entrances/exits for employees, where possible;

g.  Limit in-person employee gatherings (e.g. staff meetings) to the greatest extent possible;

h.  Establish designated areas for vendor pickups and/or deliveries, limiting contact to the extent possible;

i.  Provide workers with an acceptable face covering at no cost to the employee and have an adequate supply of coverings in case of need for replacement;

j.  Ensure all staff wear face coverings at all times and that they practice hand hygiene and use bare hand barriers consistent with state and local sanitary codes;

k.  Clean, replace, and prohibit sharing of face coverings;

l.  Train employees on how to don, doff, clean (as applicable), and discard PPE;

m.  Limit the sharing of objects (e.g. kitchen tools, pens, pads), as well as the touching of shared surfaces (e.g. doorknobs, keypads, touch screens); or, require workers to wear gloves when in contact with shared objects or frequently touched surfaces; or, require workers to perform hand hygiene before and after contact;

n.  Ensure that employees who are bussing tables wash their hands with soap/water and, if they wear gloves, replace the gloves before and after cleaning and disinfecting tables;

o.  Adhere to hygiene, cleaning, and disinfection requirements from the Centers for Disease Control and Prevention (CDC) and Department of Health (DOH) and maintain logs that document date, time, and scope of cleaning;

p.  Provide and maintain hand hygiene stations including handwashing with soap, running warm water, and disposable paper towels, as well as an alcohol-based hand sanitizer containing 60% or more alcohol for areas where handwashing is not available or practical;

q.  Provide and encourage employees to use cleaning and disinfection supplies for shared surfaces for use before and after use of these surfaces, followed by hand hygiene;

r.  Regularly clean and disinfect the establishment and more frequently clean and disinfect high risk areas used by many individuals and for frequently touched surfaces (e.g. restrooms).  Cleaning and disinfection must be rigorous and ongoing and should occur at least after each shift, daily, or more frequently if needed;

s.  Ensure that equipment is regularly cleaned and disinfected using registered disinfectants, including at least as often as employees change workstations;

t.  Before returning to work, complete pre-return checks and assessments of kitchen systems to ensure a healthy and safe environment;

u.  Minimize sharing of kitchen equipment between staff (e.g. knives, pots, rags/towels), where possible;

v.  Do not provide customers with devices (e.g. buzzers) to provide alerts to customers that seating or an order is available, unless such devices are thoroughly cleaned and disinfected between each use;

w.  Provide cleaning and disinfection of exposed areas in the event of an individual is confirmed to have COVID19, with such cleaning and disinfection to include, at a minimum, all heavy transit areas and high-touch surfaces;

x.  Ensure all condiments provided directly to customers are in single-use disposable containers or reusable containers that are regularly cleaned/disinfected;

y.  If non-disposable menus are used, clean and disinfect the menus between each party's use;

z.  Use pre-packaged silverware or pre-rolled silverware.  Silverware must be pre-rolled while wearing masks and gloves;

aa. Affirm and review and understand the state issued industry guidelines, and that they will be implemented;

bb. Post signage to remind employees and patrons to adhere to proper hygiene, social distancing rules, appropriate use of PPE, and cleaning and disinfection protocols;

cc. Immediately notify the state and local health department if a worker was in close contact with others and tests positive for COVID-19;

dd. Cooperate with contact tracing efforts, including notification of potential contacts in the workplace, while maintaining confidentiality required by state and federal law and regulations;

ee. Conspicuously post completed safety plans on site;

ff.  Implement mandatory daily health screening practices (e.g. questionnaire, temperature check) of their employees and, where practicable, vendors;

gg. Designate a point-of-contact as the party for individuals to inform if they later are experiencing COVID-19- related symptoms, as noted in the questionnaire.

50.      The above-detailed requirements have the force of law, and as such, Plaintiffs are entitled to a presumption that they, and their patrons, will follow them.

51.      Further, Plaintiffs have an obligation to enforce applicable rules contained in the Interim Guidance — and promulgated by Defendants — among their patrons, including social-distancing protocols and the wearing of masks.  As such, it can be expected that Plaintiffs' patrons, whether at a restaurant for dinner, a wedding, or both, will abide by Defendants' requirements and that Plaintiffs will take action towards any patrons who violate the rules.

52.      Before Plaintiffs are allowed to reopen, they are required by Defendants to read and "affirm" that they have reviewed and understood the state-issued industry guidance and that they will implement them.

53.      The SLA, interpreting the Interim Guidance, has determined that dancing is not permissible, that all persons not already seated should be encouraged to wait in their vehicle or leave the premises, and that congregating other than by persons seated at tables is not permissible.  Patrons should be standing only for necessary reasons such as use of restrooms, entering, and exiting.[1]  Therefore, whether associated with a wedding or restaurant service to the general public, mingling, dancing, and other "standing activities" are prohibited under the Interim Guidance.

**FACTUAL ALLEGATIONS COMMON TO THE CLASS**

54.      Defendants have prohibited the proposed class members from hosting weddings at their venues where more than 50 people will be in attendance.  However, Defendants have created thousands of exceptions to the 50-person limit by allowing restaurants

---

[1] *Phase 3/4 Guidelines for Licensed On-Premises Establishments*, https://sla.ny.gov/phase3-guidelines-for-on-premises-licenses.

— including those operated by the proposed class members — to host members of the general public for dinner service at 50% of their regular maximum capacity, which, in the case of the proposed class members, is in excess of 50 people.

55.     Defendants have thus determined that it is safe and acceptable for all restaurants in the state — including the proposed Plaintiff class — to allow in-person gatherings of the general public for dinner service at 50% of their regular maximum capacity, which in many instances statewide and in all instances involving the proposed Plaintiff class, is greater than 50 people.

56.     Defendants have enacted and enforced the 50-person limitation on weddings despite the fact that there is no material difference between a wedding and regular dinner service to justify disparate treatment.

57.     Defendants have enacted and enforced the 50-person limitation on weddings despite the fact that attendees at a wedding are obligated to follow the same social-distancing and hygiene rules and standards as attendees at a restaurant for dinner service as detailed in the Interim Guidance.  *See* Ex. C.

58.     Defendants have enacted and enforced the 50-person limitation upon weddings despite the fact that the proposed Plaintiff class is obligated to follow and enforce the same social-distancing and hygiene rules and standards for a wedding as they would and as all restaurants would for regular dinner service as detailed in the Interim Guidance.  *Id.*

59.     Proposed class members are deprived of equal protection under the Fourteenth Amendment to the United States Constitution as they are prohibited by Defendants from hosting weddings in excess of 50 people, while restaurant service under the same

circumstances and at the same locations — as well as at other similarly situated locations — are permitted to seat more than 50 people for dining in a manner that is deemed safe by the State of New York.  There is no material difference between hosting weddings or the general public for restaurant service.

60.     In addition to irreparable harm suffered by Plaintiffs by virtue of the deprivation of their Constitutional rights, Plaintiffs also have suffered, and will continue to suffer, economic hardship engendered by Defendants enacting and enforcement of the 50-person limitation for wedding dinners; said economic hardship has been a major disruption to the Plaintiffs' businesses and threatens the continued viability and existence of the Plaintiffs' businesses.

## FACTS PERTAINING TO THE NAMED PARTIES

61.     Plaintiff Riviera is the operator of the Riviera at Massapequa is a facility with a restaurant with a regular maximum capacity of 353 people.

62.     Under the rules promulgated by Defendants for food service facilities, Riviera is able to provide restaurant service for up to 176 people at one sitting.  However, under the same rules, Riviera is prohibited from hosting a wedding dinner in excess of fifty people, despite the capacity of the restaurant of 176 people.

63.     Riviera has developed and enforces COVID policies in accordance with the requirements set forth by Defendants.

64.     Plaintiff Partition Street opened "Diamond Mills" in 2011.  Diamond Mills is a facility containing a ballroom with regular maximum capacity of 400 people and a tavern with regular maximum capacity of 176 people.

65.     Under the rules promulgated by Defendants for food service facilities, Partition Street is able to provide restaurant service in the ballroom for 200 people and in the tavern for 88 people.  However, under the same rules, Partition Street is prohibited from hosting a wedding gathering in excess of fifty people, despite the capacity of the ballroom of 200 people and the tavern of 88 people.

66.     Partition Street has developed and follows COVID policies in accordance with the requirements set forth by Defendants.

## COUNT I

### Violation of the Fourteenth Amendment
### (Equal Protection)
### 42 U.S.C. § 1983

67.     Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-66.

68.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution guarantees equal protection of the laws, requiring that all persons similarly situated should be treated alike.

69.     The challenged executive orders and regulations treat each proposed class member differently based solely on whether they are serving dinner to members of the general public or to people who have gathered in relation to a marriage, even though these two groups of people are abiding by the same social-distancing and hygiene rules.

70.     The degree of similarity between a given class member serving dinner to members of the public and serving dinner to people gathered in relation to a marriage is extremely high as both events are occurring in the same location within the same venue, and with

the same social-distancing and hygiene protocols in effect.  In this way, the ideal comparator of each Plaintiff hosting a wedding is the same Plaintiff hosting restaurant service.

71.     There is no rational basis to justify the disparate treatment of restaurant service and wedding gatherings.

72.     Further, the Defendants' severe restriction of wedding gatherings, while permitting numerous other gatherings unrestricted as to size, is not rationally related to any legitimate state interest and thus cannot survive rational basis analysis under the Equal Protection Clause.

73.     The challenged regulations thus violate the Equal Protection Clause of  the Fourteenth Amendment to the United States Constitution, including its substantive component.

74.     In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

75.     Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## COUNT II

### Relief Pursuant to N.Y. CPLR Article 78

76.     Plaintiffs re-allege and incorporate by reference the allegations contained in ¶¶ 1-75.

77.     Plaintiffs seek to prohibit the enforcement of the 50-person limit on "nonessential" gatherings as imposed and enforced by Defendants as the enacting and

enforcement of such a limitation is beyond the jurisdiction and lawful authority of Defendants. Plaintiffs further seek a determination that the 50-person limit imposed on "non-essential" gatherings is arbitrary and capricious, an abuse of discretion, and imposed in violation of lawful procedure, and therefore should be annulled.

78.     The 50-person limit on "non-essential" gatherings imposed and enforced by Defendants is beyond the jurisdiction and lawful authority of Defendants because it is ultra vires state action in violation of federal rights, as alleged above.

79.     The 50-person limit on "non-essential" gatherings imposed and enforced by Defendants is beyond the jurisdiction and lawful authority of Defendants because it is in violation of rights under the U.S. Constitution, as alleged above.

80.     The 50-person limit on "non-essential" gatherings imposed and enforced by Defendants is arbitrary, capricious, and without any rational basis in light of the other activities that expressly are permitted and encouraged by Defendants such as dining at restaurants at 50% of regular capacity, bowling, attending museums, exercising in public gyms, protests, graduations, and attending special-education classes without limitation.

81.     The 50-person limit on "non-essential" gatherings imposed and enforced by Defendants as detailed above is arbitrary and capricious because the term "non-essential" is impossibly vague and incapable of interpretation and allows for the exercise of unfettered discretion in those charged with enforcement of the limitation.

82.     Plaintiffs exhausted any available administrative remedies and have no other remedy at law.

83.     Plaintiffs have not made a prior application for the relief requested herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant the following relief:

A.  A preliminary and final injunction restraining Defendants, and all those acting in concert with them, from enforcing any gathering limits on weddings to be hosted by Plaintiffs, including the 50-person limit on "non-essential gatherings;"

B.  In the alternative, compelling Defendants to apply to weddings hosted by Plaintiffs no greater limits than they have placed on restaurant and food service provided by the same Plaintiffs;

C.  A declaratory judgment that the challenged regulations, including the 50- person limit on "non-essential" gatherings including weddings, are unconstitutional both facially and as applied to Plaintiffs; and

D.  An award of costs of this litigation, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

E.  Such other and further relief as this Court deems just and proper.

Dated: August 28, 2020

<div style="margin-left: 40%;">

s/ R. Anthony Rupp III
R. Anthony Rupp III, Esq.
Bar ID # 502559
Phillip A. Oswald, Esq.
Bar ID # 519974
Rupp Baase Pfalzgraf Cunningham
25 Walton Street
Saratoga Springs, New York 12866
(518) 886-1902
oswald@ruppbaase.com
rupp@ruppbaase.com

</div>

## **<u>VERIFICATION</u>**

James Karras, on behalf of Plaintiff Bill & Ted's Riviera, Inc., verifies under penalty of perjury and pursuant to 28 U.S.C. § 1746 that I have read the foregoing complaint, know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters, I believe them to be true. Executed on August 28, 2020.

James Karras