# EXHIBIT A

Case No.: 1:20-CV-0651 (GLS/DJS)

**EXHIBIT A**



No. 202

<u>E X E C U T I V E   O R D E R</u>

**Declaring a Disaster Emergency in the State of New York**

**WHEREAS**, on January 30, 2020, the World Health Organization designated the novel coronavirus, COVID-19, outbreak as a Public Health Emergency of International Concern;

**WHEREAS**, on January 31, 2020, United States Health and Human Services Secretary Alex M. Azar II declared a public health emergency for the entire United States to aid the nation's healthcare community in responding to COVID-19;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and more are expected to continue; and

**WHEREAS**, New York State is addressing the threat that COVID-19 poses to the health and welfare of its residents and visitors.

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the Laws of the State of New York, hereby find, pursuant to Section 28 of Article 2-B of the Executive Law, that a disaster is impending in New York State, for which the affected local governments are unable to respond adequately, and I do hereby declare a State disaster emergency for the entire State of New York. This Executive Order shall be in effect until September 7, 2020; and

**IN ADDITION**, this declaration satisfies the requirements of 49 C.F.R. 390.23(a)(I)(A), which provides relief from Parts 390 through 399 of the Federal Motor Carrier Safety Regulations (FMCSR). Such relief from the FMCSR is necessary to ensure that crews are available as needed.

**FURTHER**, pursuant to Section 29 of Article 2-B of the Executive Law, I direct the implementation of the State Comprehensive Emergency Management Plan and authorize all necessary State agencies to take appropriate action to assist local governments and individuals in containing, preparing for, responding to and recovering from this state disaster emergency, to protect state and local property, and to provide such other assistance as is necessary to protect public health, welfare, and safety.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 6, 2020 the following:

Section 112 of the State Finance Law, to the extent consistent with Article V, Section 1 of the State Constitution, and to the extent necessary to add additional work, sites, and time to State contracts or to award emergency contracts, including but not limited to emergency contracts or leases for relocation and support of State operations under Section 3 of the Public Buildings Law; or emergency contracts under Section 9 of the Public Buildings Law; or emergency contracts for professional services under Section 136-a of the State Finance Law; or emergency contracts for commodities, services, and technology under Section 163 of the State Finance Law; or design-build or best value contracts under and Part F of Chapter 60 of the Laws of 2015 and Part RRR of Chapter 59 of the Laws of 2017; or emergency contracts for purchases of commodities, services, and technology through any federal GSA schedules, federal 1122 programs, or other state, regional, local, multi-jurisdictional, or cooperative contract vehicles;

Section 163 of the State Finance Law and Article 4-C of the Economic Development Law, to the extent necessary to allow the purchase of necessary commodities, services, technology, and materials without following the standard notice and procurement processes;

Section 97-G of the State Finance Law, to the extent necessary to purchase food, supplies, services, and equipment or furnish or provide various centralized services, including but not limited to, building design and construction services to assist affected local governments, individuals, and other non-State entities in responding to and recovering from the disaster emergency;

Section 359-a, Section 2879, and 2879-a of the Public Authorities Law to the extent necessary to purchase necessary goods and services without following the standard procurement processes;

Sections 375, 385 and 401 of the Vehicle and Traffic Law to the extent that exemption for vehicles validly registered in other jurisdictions from vehicle registration, equipment and dimension requirements is necessary to assist in preparedness and response to the COVID-19 outbreak;

Sections 6521 and 6902 of the Education Law, to the extent necessary to permit unlicensed individuals, upon completion of training deemed adequate by the Commissioner of Health, to collect throat or nasopharyngeal swab specimens from individuals suspected of being infected by COVID-19, for purposes of testing; and to the extent necessary to permit non-nursing staff, upon completion of training deemed adequate by the Commissioner of Health, to perform tasks, under the supervision of a nurse, otherwise limited to the scope of practice of a licensed or registered nurse;

Subdivision 6 of section 2510 and section 2511 of the Public Health Law, to the extent necessary to waive or revise eligibility criteria, documentation requirements, or premium contributions; modify covered health care services or the scope and level of such services set forth in contracts; increase subsidy payments to approved organizations, including the maximum dollar amount set forth in contracts; or provide extensions for required reports due by approved organizations in accordance with contracts;

Section 224-b and subdivision 4 of section 225 of the Public Health Law, to the extent necessary to permit the Commissioner of Health to promulgate emergency regulations and to amend the State Sanitary Code;

Subdivision 2 of section 2803 of the Public Health Law, to the extent necessary to permit the Commissioner to promulgate emergency regulations concerning the facilities licensed pursuant to Article 28 of the Public Health Law, including but not limited to the operation of general hospitals;

Subdivision 3 of section 273 of the Public Health Law and subdivisions 25 and 25-a of section 364-j of the Social Services Law, to the extent necessary to allow patients to receive prescribed drugs without delay;

Section 400.9 and paragraph 7 of subdivision f of section 405.9 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals and nursing homes licensed pursuant to Article 28 of the Public Health Law ("Article 28 facilities") that are treating patients during the disaster emergency to rapidly discharge, transfer, or receive such patients, as authorized by the Commissioner of Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices, and to comply with the Emergency Medical Treatment and Active Labor Act (42 U.S.C. section 1395dd) and any associated regulations;

Section 400.11 of Title 10 of the NYCRR, to the extent necessary to permit Article 28 facilities receiving patients as a result of the disaster emergency to complete patient review instruments as soon as practicable;

Section 405 of Title 10 of the NYCRR, to the extent necessary to maintain the public health with respect to treatment or containment of individuals with or suspected to have COVID-19;

Subdivision d and u of section 800.3 of Title 10 of the NYCRR, to the extent necessary to permit emergency medical service personnel to provide community paramedicine, transportation to destinations other than hospitals or health care facilities, telemedicine to facilitate treatment of patients in place, and such other services as may be approved by the Commissioner of Health;

Paragraph 3 of subdivision f of section 505.14 of Title 18 of the NYCRR, to the extent necessary to permit nursing supervision visits for personal care services provided to individuals affected by the disaster emergency be made as soon as practicable;

Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals who meet the federal requirements for high complexity testing to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

Subdivision 4 of section 6909 of the Public Health Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

Section 596 of Title 14 of the NYCRR to the extent necessary to allow for rapid approval of the use of the telemental health services, including the requirements for in-person initial assessment prior to the delivery of telemental health services, limitations on who can deliver telemental health services, requirements for who must be present while telemental health services are delivered, and a recipient's right to refuse telemental health services;

Section 409-i of the Education Law, section 163-b of the State Finance Law with associated OGS guidance, and Executive Order No. 2 are suspended to the extent necessary to allow elementary and secondary schools to procure and use cleaning and maintenance products in schools; and sections 103 and 104-b of the General Municipal Law are suspended to the extent necessary to allow schools to do so without the usual advertising for bids and offers and compliance with existing procurement policies and procedures;

Article 7 of the Public Officers Law, section 41 of the General Construction Law, and section 3002 of the Public Health Law, to the extent necessary to permit the Public Health and Health Planning Council and the State Emergency Medical Services Council to meet and take such actions as authorized by law, as may be necessary to respond to the COVID-19 outbreak, without meeting quorum requirements or permitting the public in-person access to meetings, provided that any such meetings must be webcast and means for effective public comment must be made available; and

**FURTHER,** I hereby temporarily modify, for the period from the date of this Executive Order through April 6, 2020, the following laws:

Section 24 of the Executive Law; Sections 104 and 346 of the Highway Law; Sections 1602, 1630, 1640, 1650, and 1660 of the Vehicle and Traffic Law; Section 14(16) of the Transportation Law; Sections 6-602 and 17-1706 of the Village Law; Section 20(32) of the General City Law; Section 91 of Second Class Cities Law; Section 19-107(ii) of the New York City Administrative Code; and Section 107.1 of Title 21 of the New York Codes, Rules and Regulations, to the extent necessary to provide the Governor with the authority to regulate traffic and the movement of vehicles on roads, highways, and streets.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

seventh day of March in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.1

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by the Constitution and the laws of the State of New York, do hereby continue Executive Order 202, dated March 7, 2020, and I hereby continue any suspension or modification of law made by Executive Order 202 for thirty days until April 11, 2020, except that such Executive Order is amended to read as follows:

**FURTHER,** pursuant to the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 11, 2020 the following:

<u>Suspension of laws and regulations to allow for expansion of services and temporary facilities for health and human service providers:</u>

- Subdivisions (a) and (e) of section 401.3 and section 710.1 of Title 10 of the NYCRR, to the extent necessary to allow hospitals to make temporary changes to physical plant, bed capacities, and services provided, upon approval of the Commissioner of Health, in response to a surge in patient census;

- Parts 709 and 710 of Title 10 of the NYCRR, to the extent necessary to allow construction applications for temporary hospital locations and extensions to be approved by the Commissioner of Health without considering the recommendation of the health systems agency or the Public Health and Health Planning Council, and to take such further measures as may be necessary to expedite departmental reviews for such approval;

- Sections 34-2.6 and 58-1.7 of Title 10 of the NYCRR, to the extent necessary to permit clinical laboratories to operate temporary collecting stations to collect specimen from individuals suspected of suffering from a COVID-19 infection;

- Section 41.34 of the Mental Hygiene law and Part 620 and section 686.3 of Title 14 of the NYCRR, to the extent necessary to allow facilities certified pursuant to Article 16 of the Mental Hygiene law to increase and/or exceed certified capacity limits without following site selection procedures and/or without providing notification to the appropriate local governmental unit upon approval of the commissioner of OPWDD;

- Section 33.17 of the Mental Hygiene Law and associated regulations to the extent necessary to permit providers to utilize staff members in the most effective means possible to transport individuals receiving services from the Office of Mental Health or a program or provider under the jurisdiction of the Office of Mental Health during the emergency, provided such facilities take all reasonable measures to protect the health and safety of such individuals;

- Sections 29.11 and 29.15 Mental Hygiene Law and section 517 of Title 14 of the NYCRR to the extent necessary to permit mental health facilities licensed pursuant to Article 31 of the Mental Hygiene Law that are treating patients during the emergency to rapidly discharge, including conditionally discharge, transfer, or receive such patients, as authorized by the Commissioner of the Office of Mental Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices;

- Section 29.13 of the Mental Hygiene Law and associated regulations to the extent individuals in areas affected by the emergency are temporarily receiving services from different providers, whose immediate priority is to stabilize the individual, address acute symptoms, and provide supports including medication and stress relief, such that it is impossible to comply with development, assessment, scope and frequency, and documentation requirements for treatment plans;

- Sections 131, 132 and 349-a of the Social Services Law to the extent necessary to allow screenings to be conducted by telephone;

- Sections 2510 and 2511 of the Public Health Law, to the extent necessary to waive or revise eligibility criteria, documentation requirements, or premium contributions; modify covered health care services or the scope and level of such services set forth in contracts; increase subsidy payments to approved organizations, including the maximum dollar amount set forth in contracts; or provide extensions for required reports due by approved organizations in accordance with contracts;

- Subdivision 4 of section 6909 of the Education Law, subdivision 6 of section 6527 of the Education Law, and section 64.7 of Title 8 of the NYCRR, to the extent necessary to permit physicians and certified nurse practitioners to issue a non-patient specific regimen to nurses or any such other persons authorized by law or by this executive order to collect throat or nasopharyngeal swab specimens from individuals suspected of suffering from a COVID-19 infection, for purposes of testing, or to perform such other tasks as may be necessary to provide care for individuals diagnosed or suspected of suffering from a COVID-19 infection;

- Section 400.9 and paragraph 7 of subdivision h of section 405.9 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals and nursing homes licensed pursuant to Article 28 of the Public Health Law ("Article 28 facilities") that are treating patients during the disaster emergency to rapidly discharge, transfer, or receive such patients, as authorized by the Commissioner of Health, provided such facilities take all reasonable measures to protect the health and safety of such patients and residents, including safe transfer and discharge practices, and to comply with the Emergency Medical Treatment and Active Labor Act (42 U.S.C. section 1395dd) and any associated regulations;

- Subdivision 3 of section 2801-a of the Public Health Law and section 600.1 of Title 10 of the NYCRR, to the extent necessary to permit the Commissioner of Health to approve the establishment of temporary hospital locations and extensions without following the standard approval processes and to take such further measures as may be necessary to expedite departmental reviews for such approval;
- Section 2999-cc of the Public Health Law and any regulatory provisions promulgated thereunder by the Department of Health, the Office of Mental Health, the Office of Addiction Services and Supports, and the Office for People with Developmental Disabilities, to the extent necessary to allow additional telehealth provider categories and modalities, to permit other types of practitioners to deliver services within their scopes of practice and to authorize the use of certain technologies for the delivery of health care services to established patients, pursuant to such limitations as the commissioners of such agencies may determine appropriate;

**Suspension of laws and regulations relating to child care to allow flexibility for providers while continuing to protect the health and safety of children:**

- Sections 414.7, 416.7, 417.7, 418-1.7, 418-2.7, 414.8, 416.8, 417.8, 418-1.8, and 418-2.8 of Title 18 of the NYCRR insofar as that regulation sets the ages of children who can be served and the standards for care; Sections 414.13, 416.13, 417.13, 418-1.13, 418-2.13 of Title 18 of the NYCRR suspending requirements for staff qualifications; Section 390 of the Social Services law suspending provisions setting capacity limits for family and group family day care programs and standards for staff/child ratios in all child care modalities; Sections 390(3) and 390-a of the Social Services Law and regulations at 18 NYCRR Sections 413(g), 414.14, 415.13, 416.14, 417.14, 418-1.14, 418-2.14, allowing for the waiver of certain provisions establishing training and inspection requirements for

child day care; and Section 424-a of the Social Services Law insofar as allowing for the waiver of fees paid for statewide central register of child abuse and maltreatment database check;

- Section 410-w of the Social Services Law and sections 404.1, 404.7, 415.2, 415.3, 415.6 of Title 18 of the NYCRR insofar as that statute and those regulations establish financial eligibility standards, the reimbursement requirements, and set timeliness requirements for the provision of services including payment for absences due to COVID-19 abatement processes;

**Suspension of regulations to prevent delays in providing home delivered meals and in providing services under the Expanded In-Home Services for the Elderly Program (EISEP) to older adults:**

- Clause (d) of subparagraph (ii) of paragraph (3) of subdivision (a) of section 6654.10 of Title 9 of the NYCRR, insofar as it requires an assessment be conducted prior to or within 10 days of the initiation of home delivered meals;

- Subdivision (h) of section 6654.16 of Title 9 of the NYCRR, insofar as it requires an assessment be conducted within 10 working days after the completion of the screening intake and prior to the initiation of services under the Expanded In-Home Services for the Elderly Program (EISEP);

- Subdivision (n) of section 6654.16 of Title 9 of the NYCRR, to allow for a care plan to remain in effect for a period exceeding 12 months under the Expanded In-Home Services for the Elderly Program (EISEP) when such care plan would otherwise expire during the period in which a disaster emergency is declared;

- Subdivision (x) of section 6654.16 of Title 9 of the NYCRR, modifying requirements for reassessments to be conducted every 12 months or within 5 days of becoming aware of a change in circumstance under the Expanded In-Home Services for the Elderly Program (EISEP);

**Suspension of law to allow waiver of requirements necessary for apportionment of school aid:**

- Section 3604(7) of the Education Law, to the extent consistent and necessary to allow the commissioner to disregard such reduction in the apportionment of public money due to a failure by a school to meet the instructional requirements proscribed within this section due to the properly executed declaration of a local state of emergency as defined within sub-section (i), a school is directed to close by a state or local health official or following a properly executed declaration of a state of emergency as defined within sub-section (i), limited to the extent that those specified schools are unable to make up missed instructional days;

**Suspension of laws and regulations relating to emergency procurement:**

- Sections 553(22), 559, 1209, and 1265-a of the Public Authorities Law, and 21 NYCRR Part 1002, to the extent necessary to purchase necessary equipment, materials, supplies, or services, without following the standard procurement processes, including the standard prompt payment policy;

**Suspensions of law relating to appearances by defendants:**

- Notwithstanding any other provision of law and except as provided in section 182.30 of Article 182 of the Criminal Procedure Law, the court, in its discretion, may dispense with the personal appearance of the defendant, except an appearance at a hearing or trial, and conduct an electronic appearance in connection with a criminal action pending in any county in New York State, provided that the chief administrator of the courts has authorized the use of electronic appearance due to the outbreak of COVID-19, and the defendant, after consultation with counsel, consents on the record. Such consent shall be required at the commencement of each electronic appearance to such electronic appearance.

**Suspension of law relating to waiting periods for unemployment insurance claimants whose claims arise directly out of COVID-19 outbreak:**

- Subdivision 7 of Section 590 of the Labor Law, so far as it relates to the waiting period for unemployment insurance claimants whose claims for unemployment insurance arise directly out of closings of schools or other workplaces in which claimants were employed, or out of claimants' isolation or quarantine in connection with COVID-19; and

**Suspension of law allowing the attendance of meetings telephonically or other similar service:**

- Article 7 of the Public Officers Law, to the extent necessary to permit any public body to meet and take such actions authorized by the law without permitting in public in-person access to meetings and authorizing such meetings to be held remotely by conference call or similar service, provided that the public has the ability to view or listen to such proceeding and that such meetings are recorded and later transcribed;

**Suspension of law allowing residents of nursing homes to vote with modified visitor policies in place:**

- Subdivision 8 of section 8-407 of the Election Law to allow individuals not employed by the Board of Elections to assist residents of nursing homes or adult care facilities in the completion of absentee ballot applications and voting;

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 11, 2020:

- Any guidance issued by the New York State Department of Health related to prevention and infection control of COVID-19 at nursing homes and adult care facilities, including but not limited to guidance on visitation, shall be effective immediately and shall supersede any prior conflicting guidance issued by the New York State Department of Health and any guidance issued by any local board of health, any local department of health, or any other political subdivision of the State related to the same subject.

- Any large gathering or event for which attendance is anticipated to be in excess of five hundred people shall be cancelled or postponed for a minimum of thirty days.

- Any place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, shall operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity, for thirty days effective on Friday, March 13, 2020, except that any theater seating five hundred or more attendees for a live performance located in a city of one million or more shall not hold any further performances after 5pm on March 12, 2020.

- The two preceding directives shall not apply to a school, hospital, nursing home, other medical office or facility as determined by the Commissioner of Health, mass transit or mass transit facility, governmental facility, law enforcement facility, or retail establishments including grocery stores. The Commissioner of Health may allow for businesses that are not public gathering spaces to exceed five hundred persons if the occupancy is less than fifty percent capacity subject to public health review.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany the twelfth

day of March in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.2

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 13, 2020 the following:

<u>Suspension of laws and regulations:</u>

- Section 8-400 of the Election Law is temporarily suspended and otherwise altered to provide that due to the prevalence and community spread of COVID-19, temporary illness for the purpose of this section shall include the potential for contraction of the COVID-19 virus for any election held on or before April 1, 2020;

- Solely for any election held on or before April 1, 2020, Section 8-400 of the Election Law is hereby further modified to allow for electronic application, with no requirement for in-person signature or appearance to be able to access an absentee ballot; and deadlines to apply for such ballot are hereby modified to no later than March 23, 2020 and such ballots once voted shall be postmarked no later than March 24, 2020 or may be delivered in person to any board of elections; and

- Article 6 of the Election Law is modified to the extent necessary to reduce required number of signatures on petitions pursuant to Section 6-136 of such law to 1.5% of the enrolled voters required, or 30% of the stated threshold, whichever is less. Further such provisions are modified to require that gathering of signatures shall be suspended effective Tuesday, March 17, 2020 at 5 p.m.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 13, 2020:

Any school district which is closing pursuant to a local state of emergency declared as a result of the COVID-19 virus shall be required to first consult with local department of health and also exhaust any available time including snow days and vacation days. Additionally, the State Education Department shall promulgate guidance for districts to ensure access to meals for students in need, critical educational supports for students and distance learning options.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany the

fourteenth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.3

E X E C U T I V E  O R D E R

**CONTINUING TEMPORARY SUSPENSION AND MODIFICATION OF LAWS RELATING TO THE DISASTER EMERGENCY**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS**, one state acting alone cannot control the continued spread of this disease and it requires coordination and cooperation amongst the states; and

**NOW, THEREFORE**, I, Governor Andrew M. Cuomo, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, or to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives and suspensions and modifications for the period from the date of this Executive Order 202.3 through April 15, 2020:

- The directive requiring large gatherings and events to be cancelled or postponed if they had anticipated attendance in excess of 500 people by virtue of Executive Order 202.1 dated March 12, 2020, is hereby amended and modified to require that any large gathering or event (concert, conference, worship service, performance before a large audience, etc.) shall be cancelled or postponed if more than fifty persons are expected in attendance, at any location in New York State until further notice.

- Any restaurant or bar in the state of New York shall cease serving patrons food or beverage on-premises effective at 8 pm on March 16, 2020, and until further notice shall only serve food or beverage for off-premises consumption. Notwithstanding any provision of the alcohol and beverage control law, a retail on-premises licensee shall be authorized for the duration of this Executive Order to sell alcohol for off-premises consumption, which shall include either take-out or delivery, subject to reasonable limitations set by the State Liquor Authority.

- Any facility authorized to conduct video lottery gaming, or casino gaming shall cease operation effective at 8 pm on March 16, 2020, and until further notice. For a Class III

Tribal Gaming enterprise or Class II Tribal Gaming enterprise, any facility should also close to the public until further notice.

- Any gym, fitness centers or classes, and movie theaters shall also cease operation effective at 8 pm on March 16, 2020 until further notice.

- No local government or political subdivision shall issue any local emergency order or declaration of emergency or disaster inconsistent with, conflicting with or superseding the foregoing directives, or any other executive order issued under Section 24 of the Executive Law and any local emergency order or any local administrative codes, charters, laws, rules or regulations, are hereby suspended with respect to any such order issued under such authority different or in conflict with Executive directives.



GIVEN under my hand and the Privy Seal of the State in the City of Albany this sixteenth day of March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.4

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue; and

**NOW, THEREFORE**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 15, 2020:

- Any local government or political subdivision shall, effective March 17, 2020, allow non-essential personnel as determined by the local government, to be able to work from home or take leave without charging accruals, except for those personnel essential to the locality's response to the COVID-19 emergency. Such non-essential personnel shall total no less than fifty-percent (50%) of the total number of employees across the entire workforce of such local government or political subdivision.

- Restrictions on reporting to work for any state worker whose service is non-essential, or not required to support the COVID-19 response, are expanded to all counties in the State of New York.

- Notwithstanding any prior directives, every school in the state of New York is hereby directed to close no later than Wednesday, March 18, 2020, for a period of two weeks, ending April 1, 2020. The state shall reassess at that time whether to extend such closure beyond this date and may continue to suspend the 180 day instructional requirement. The 180 day suspension will be adjusted to the state's allowed closure directive. Schools that exceed the period will not be exempted from the 180-day rule. School districts shall develop a plan for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of parents in the health care profession or first responders who are critical to the response effort. Such plans shall be submitted to the State Education Department and may be amended or modified by the State Education Department, in consultation with the Department of Health and Office of Children and Family Services at any time. School districts in Nassau County, Suffolk County and Westchester County and the City of New York must submit such plans for approval no later than midnight, March 17, 2020 to the State.

- Any village election to be held March 17, 2020 shall be postponed and any elected official holding such position shall remain in office until such time as a new election is held.



G I V E N under my hand and the Privy Seal of the

State in the City of Albany the

sixteenth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.5

## EXECUTIVE ORDER

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** in order to facilitate the most timely and effective response to the COVID 19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 17, 2020 the following:

- Sections 6512 through 6516, and 6524 of the Education Law and Part 60 of Title 8 of the NYCRR, to the extent necessary to allow physicians licensed and in current good standing in any state in the United States to practice medicine in New York State without civil or criminal penalty related to lack of licensure;

- Section 6502 of the Education Law and Part 59.8 of Title 8 of the NYCRR, to the extent necessary to allow physicians licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Sections 6512 through 6516, and 6905, 6906 and 6910 of the Education Law and Part 64 of Title 8 of the NYCRR, to the extent necessary to allow registered nurses, licensed practical nurses, and nurse practitioners licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 6512 through 6516, and 6541 of the Education Law and Part 60.8 of Title 8 of the NYCRR 8 NYCRR, to the extent necessary to allow physician assistants licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Section 400.12 of Title 10 of the NYCRR, to the extent necessary to allow patients affected by the disaster emergency to be transferred to receiving Article 28 facilities as authorized by the Commissioner of Health;

- Section 415.11 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to perform comprehensive assessments of those residents temporarily evacuated to such nursing homes as soon as practicable following admission or to forego such assessments for individuals returned to facilities from which they were evacuated;

- Subdivision b of section 415.15 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to obtain physician approvals for admission as soon as practicable following admission or to forego such approval for individuals returned to facilities from which they were evacuated;

- Subdivision i of section 415.26 of Title 10 of the NYCRR, to the extent necessary to permit nursing homes receiving individuals affected by the disaster emergency to comply with admission procedures as soon as practicable following admission or to forego such procedures for individuals returned to facilities from which they were evacuated;

- Paragraph 2 of subdivision g of section 763.4; paragraphs 7 and 8 of subdivision h of section 763.4; paragraph 2 of subdivision a of section 766.5; and paragraph 1 of subdivision d of section 766.5 of Title 10 of the NYCRR, to the extent necessary to permit certified home health agencies, long term home health care programs, AIDS home care programs, and licensed home care services agencies serving individuals affected by the disaster emergency to conduct in-home supervision of home health aides and personal care aides as soon as practicable after the initial service visit, or to permit in-person and in-home supervision to be conducted through indirect means, including by telephone or video communication;

- Subdivision a of section 763.5 of Title 10 of the NYCRR, to the extent necessary to permit initial patient visits for certified home health agencies, long term home health care programs and AIDS home care programs serving individuals affected by the disaster emergency to be made within 48 hours of receipt and acceptance of a community referral or return home from institutional placement;

- Sections 403.3 and 403.5 if Title 10 of the NYCRR, to extend the time in which home care services entities must submit information to the Home Care Worker Registry;

- Sections 358-4.3, 358-5.12 and 358-5.13 of Title 18 of the NYCRR, to the extent necessary to allow or require appearance by any parties to a fair hearing by written, telephonic, video or other electronic means;

- Sections 2999-h and 2999-j of the Public Health Law, to the extent necessary to provide reimbursement to Medical Indemnity Fund enrollees, in primary residences where a resident has had COVID-19 or was exposed to COVID-19, for costs related to cleaning and disinfection of such primary residences, at the discretion of the Commissioner of Health;

- Section 2805-k of the Public Health Law and sections 405.4, 405.5, 405.9, 405.14, 405.19, and 405.22 of Title 10 of the NYCRR, to the extent necessary to allow staff with the necessary professional competency and who are privileged and credentialed to work in a facility in compliance with such section of the Public Health Law and such sections of the NYCRR, or who are privileged and credentialed to work in a facility in another state in compliance with the applicable laws and regulations of that other state, to practice in a facility in New York State;

- Part 405 of Title 10 of the NYCRR, to the extent necessary to adopt existing policies and procedures in a general hospital at a new, temporary facility created for the purpose of treating patients during the COVID-19 outbreak;

- Any code related to construction, energy conservation, or other building code, and all state and local laws, ordinances, and regulations relating to administration and enforcement of the foregoing, to the extent necessary to allow, upon approval by the Commissioner of Health or the Commissioner of OPWDD, as applicable, the temporary changes to physical plant, bed capacities, and services provided; the construction of temporary hospital locations and extensions; the increase in and/or exceeding of certified capacity limits; and the establishment of temporary hospital locations and extensions;

- Part 425 of Title 10 of the NYCRR and section 461-k of the Social Services Law, to the extent necessary to prevent transportation to and attendance at adult day care programs, until authorized by the Commissioner of Health;

- Section 16.17 of the Mental Hygiene Law to the extent necessary to permit the Office of People with Developmental Disabilities to take emergency action to suspend or limit a provider's operating certificate;

- Sections 633.12 and 636-1 of Title 14 of the NYCRR, to the extent necessary to temporarily deviate from an individual's service plan, which would otherwise outline participation in day programming and other community based served, and to the extent necessary to temporarily relocate individuals, in order to maintain the health and safety of that individual during this emergency period and to the extent necessary;

- Sections 33.02 and 33.05 of the Mental Hygiene law and sections 633.4, 636-1.4 and 633.16 of Title 14 of the NYCRR, to the extent necessary to restrict visitors to facilities certified pursuant Article 16 of the Mental Hygiene law and to permit restrictions on community outings for residents of such facilities to reduce the spread of COVID-19;

- Sections 633.8 and 633.14 of Title 14 of the NYCRR to the extent necessary to permit abbreviated training of direct support professionals employed in programs and facilities certified pursuant to Article 16 of the Mental Hygiene Law that are experiencing staff shortages;

- Section 633.17 of Title 14 of the NYCRR, to the extent necessary to permit abbreviated medication administration training of direct support professionals employed in programs or facilities certified pursuant to Article 16 of the Mental Hygiene Law;

- Section 390-b of the Social Services Law and regulations at sections 413.4 and 415.15 of Title 18 of the NYCRR insofar as that statute and those regulations establish background check requirements for child day care;

- Section 390 of the Social Services Law insofar as that section of law exempts school age child care programs operated by a school or entity with experience providing child care and located in a school providing elementary or secondary education from having to comply with the regulations of the office of children and family services;

- Subdivision 7 of section 590 and subdivision 2 of section 607 of the Labor Law, so far as they relate to waiting periods for unemployment insurance claimants whose claims for unemployment insurance arise due to closure of an employer for a reason related to COVID-19 or due to a mandatory order of a government entity duly authorized to issue such order to close such employer, as of March 12, 2020;

- Subdivision b of section 708 of the Business Corporation Law to the extent necessary to permit business corporations to take any action otherwise permitted under that section with the electronic consent of the members of the board or committee, when such consent is submitted via electronic mail along with information from which it can reasonably be determined that the transmission was authorized by such member;

- Sections 65(13)(b) and 66(12)(f) of the Public Service Law to the extent of having in-person public hearings, provided that such hearings are held by conference call or similar electronic means, which are recorded and later transcribed;

- Section 165(1) of the Public Service Law ("PSL") to the extent of holding public statement hearings, provided that the public may file written comments in any case subject to PSL Article 10 until issuance of a final order; and

- Section 123(1) of the Public Service Law ("PSL") to the extent of holding a public hearing, provided that the public may file written comments in any case subject to PSL Article VII until issuance of a final order.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 17, 2020:

- Any village election set to be held March 18, 2020 shall be postponed and any elected official holding such position shall remain in office until such time as a new election is held.

- Effective at 8 p.m. March 19, 2020, all indoor common portions of retail shopping malls with in excess of 100,000 square feet of retail space available for lease shall close and cease access to the public. Any stores located within shopping malls, which have their own external entrances open to the public, separate from the general mall entrance, may remain open, subject to the requirements of Executive Order 202.3 that any restaurant shall limit itself to take out or delivery food services, and that any interior entrances to common areas of the mall remain closed and locked.

- Additionally, all places of public amusement, whether indoors or outdoors, including but not limited to, locations with amusement rides, carnivals, amusement parks, water parks, aquariums, zoos, arcades, fairs, children's play centers, funplexes, theme parks, bowling alleys, family and children's attractions shall likewise be closed to the public at 8 p.m. on March 19. This directive shall not apply to public parks and open recreation areas.

- Notwithstanding section 24 of the Executive Law, no locality or political subdivision shall issue any local emergency order or executive order with respect to response of COVID-19 without the approval of the State Department of Health.

G I V E N   under my hand and the Privy Seal of the State

in the City of Albany the eighteenth day of

March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.6

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** in order to facilitate the most timely and effective response to the COVID 19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 17, 2020 the following:

- Section three of the Public Officer's Law shall not apply to an individual who is deemed necessary to hire or to engage in a volunteer capacity to provide for an effective and efficient emergency response, for the duration of such emergency;

- Subparagraph (i) of subdivision 1 of section 73 of the Public Officers Law Section shall not apply to any person who is hired, retained, appointed, or who volunteers in any way to assist New York State in its response to the declared emergency;

- Subparagraph 5 of section 73 of the Public Officers Law Section shall not apply to a state officer or employee, or a volunteer who is facilitating contributions or donations to assist New York State in its response to the declared emergency;

- Subparagraph 8 of section 73 of the Public Officers Law Section 73(8) and  section 74  of the Public Officer's Law shall not apply to volunteers or contractors who assist New York State in its response, provided that any recusals shall be adhered to if determined necessary by the appointing entity;

- Legislative Law Section 1-M is suspended to the extent that any agency may receive a donation in kind or otherwise, in any amount from any source, provided such donation is made to the State and is administered by a state agency in furtherance of the response effort;

- State Finance Law Section 11, to the extent necessary to facilitate an efficient and effective New York State emergency disaster response, shall not apply to any state agency efforts to further the response to the declared emergency;

**NOW, THEREFORE**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 17, 2020:

- Effective on March 20 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 50% no later than March 20 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. This includes essential health care operations including research and laboratory services; essential infrastructure including utilities, telecommunication, airports and transportation infrastructure; essential manufacturing, including food processing and pharmaceuticals; essential retail including grocery stores and pharmacies; essential services including trash collection, mail, and shipping services; news media; banks and related financial institutions; providers of basic necessities to economically disadvantaged populations; construction; vendors of essential services necessary to maintain the safety, sanitation and essential operations of residences or other essential businesses; vendors that provide essential services or products, including logistics and technology support, child care and services needed to ensure the continuing operation of government agencies and provide for the health, safety and welfare of the public;

- Any other business may be deemed essential after requesting an opinion from the Empire State Development Corporation, which shall review and grant such request, should it determine that it is in the best interest of the state to have the workforce continue at full capacity in order to properly respond to this disaster. No later than 5 p.m. on March 19, 2020, Empire State Development Corporation shall issue guidance as to which businesses are determined to be essential.

G I V E N  under my hand and the Privy Seal of the

State in the City of Albany this

eighteenth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.7

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS**, in order to facilitate the most timely and effective response to the COVID 19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 18, 2020 the following:

- The suspensions made to the Public Officer's Law, including provisions of Section 73 and Section 74, by Executive Order 202.6 are hereby modified to require that such suspensions and modifications shall only be valid with respect to a person hired for a nominal or no salary or in a volunteer capacity.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 18, 2020:

- Any notarial act that is required under New York State law is authorized to be performed utilizing audio-video technology provided that the following conditions are met:
  - The person seeking the Notary's services, if not personally known to the Notary, must present valid photo ID to the Notary during the video conference, not merely transmit it prior to or after;
  - The video conference must allow for direct interaction between the person and the Notary (e.g. no pre-recorded videos of the person signing);
  - The person must affirmatively represent that he or she is physically situated in the State of New York;
  - The person must transmit by fax or electronic means a legible copy of the signed document directly to the Notary on the same date it was signed;
  - The Notary may notarize the transmitted copy of the document and transmit the same back to the person; and

○ The Notary may repeat the notarization of the original signed document as of the date of execution provided the Notary receives such original signed document together with the electronically notarized copy within thirty days after the date of execution.

- Effective March 21, 2020 at 8 p.m. and until further notice, all barbershops, hair salons, tattoo or piercing parlors and related personal care services will be closed to members of the public. This shall also include nail technicians, cosmetologists and estheticians, and the provision of electrolysis, laser hair removal services, as these services cannot be provided while maintaining social distance.

- The provisions of Executive Order 202.6 requiring in-person work environment restrictions are modified as follows: Effective March 21, 2020 at 8 p.m. and until further notice all businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 75% no later than March 21 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions.



G I V E N   under my hand and the Privy Seal of the State

in the City of Albany the nineteenth day of

March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.8

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS**, in order to facilitate the most timely and effective response to the COVID-19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 19, 2020 the following:

- In accordance with the directive of the Chief Judge of the State to limit court operations to essential matters during the pendency of the COVID-19 health crisis, any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including but not limited to the criminal procedure law, the family court act, the civil practice law and rules, the court of claims act, the surrogate's court procedure act, and the uniform court acts, or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020;
- Subdivision 1 of Section 503 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a driver's license, in order to extend for the duration of this executive order the validity of driver's licenses that expire on or after March 1, 2020;
- Subdivision 1 of Section 491 of the Vehicle and Traffic Law, to the extent that it provides for a period of validity and expiration of a non-driver identification card, in order to extend for the duration of this executive order the validity of non-driver identification cards that expire on or after March 1, 2020;
- Sections 401, 410, 2222, 2251, 2261, and 2282(4) of the Vehicle and Traffic law, to the extent that it provides for a period of validity and expiration of a registration certificate or number plate for a motor vehicle or trailer, a motorcycle, a snowmobile, a vessel, a limited use vehicle, and an all-terrain vehicle, respectively, in order to extend for the duration of this executive order the validity of such registration certificate or number plate that expires on or after March 1, 2020;
- Section 420-a of the vehicle and traffic law to the extent that it provides an expiration for temporary registration documents issued by auto dealers to extend the validity of such during the duration of this executive order.
- Subsection (a) of Section 602 and subsections (a) and (b) of Section 605 of the Business Corporation Law, to the extent they require meetings of shareholders to be noticed and held at a physical location.

**EXHIBIT A:   Page 21 of 85**

**NOW, THEREFORE,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 19, 2020:

- The provisions of Executive Order 202.6 are hereby modified to read as follows: Effective on March 22 at 8 p.m.: All businesses and not-for-profit entities in the state shall utilize, to the maximum extent possible, any telecommuting or work from home procedures that they can safely utilize. Each employer shall reduce the in-person workforce at any work locations by 100% no later than March 22 at 8 p.m. Any essential business or entity providing essential services or functions shall not be subject to the in-person restrictions. An entity providing essential services or functions whether to an essential business or a non-essential business shall not be subjected to the in-person work restriction, but may operate at the level necessary to provide such service or function. Any business violating the above order shall be subject to enforcement as if this were a violation of an order pursuant to section 12 of the Public Health Law.
- There shall be no enforcement of either an eviction of any tenant residential or commercial, or a foreclosure of any residential or commercial property for a period of ninety days.
- Effective at 8 p.m. March 20, any appointment that is in-person at any state or county department of motor vehicles is cancelled, and until further notice, only on-line transactions will be permitted.
- The authority of the Commissioner of Taxation and Finance to abate late filing and payment penalties pursuant to section 1145 of the Tax Law is hereby expanded to also authorize abatement of interest, for a period of 60 days for a taxpayers who are required to file returns and remit sales and use taxes by March 20, 2020, for the sales tax quarterly period that ended February 29, 2020.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twentieth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.9

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** in order to facilitate the most timely and effective response to the COVID-19 emergency disaster, it is critical for New York State to be able to act quickly to gather, coordinate, and deploy goods, services, professionals, and volunteers of all kinds; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 20, 2020 the following:

- Subdivision two of Section 39 of the Banking Law is hereby modified to provide that it shall be deemed an unsafe and unsound business practice if, in response to the COVID-19 pandemic, any bank which is subject to the jurisdiction of the Department shall not grant a forbearance to any person or business who has a financial hardship as a result of the COVID-19 pandemic for a period of ninety days.

**NOW, THEREFORE,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through April 20, 2020:

- The Superintendent of the Department of Financial Services shall ensure under reasonable and prudent circumstances that any licensed or regulated entities provide to any consumer in the State of New York an opportunity for a forbearance of payments for a mortgage for any person or entity facing a financial hardship due to the COVID-19 pandemic. The Superintendent shall promulgate emergency regulations to require that the application for such forbearance be made widely available for consumers, and such application shall be granted in all reasonable and prudent circumstances solely for the period of such emergency.

- Further, the Superintendent shall be empowered to promulgate emergency regulations to direct that, solely for the period of this emergency, fees for the use of automated teller machines (ATMs), overdraft fees and credit card late fees, may be restricted or modified in accordance with the Superintendent's regulation of licensed or regulated entities taking into account the financial impact on the New York consumer, the safety and soundness of the licensed or regulated entity, and any applicable federal requirements.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-first day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.10

E X E C U T I V E   O R D E R

Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**WHEREAS,** ensuring the State of New York has adequate bed capacity, supplies, and providers to treat patients affected with COVID-19, as well as patients afflicted with other maladies, is of critical importance; and

**WHEREAS,** eliminating any obstacle to the provision of supplies and medical treatment is necessary to ensure the New York healthcare system has adequate capacity to provide care to all who need it;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 22, 2020 the following:

- Section 2803 of the Public Health Law, and Parts 400, 401, 405, 409, 710, 711 and 712 of Title 10 of the NYCRR, to the extent necessary to permit and require general hospitals to take all measures necessary to increase the number of beds available to patients, in accordance with the directives set forth in this Executive Order;

- Section 3001, 3005-a, 3008, and 3010 of the Public Health Law to the extent necessary to modify the definition of "emergency medical services" to include emergency, non-emergency and low acuity medical assistance; to eliminate any restrictions on an approved ambulance services or providers operating outside of the primary territory listed on such ambulance service's operating certificate with prior approval by the Department of Health; to permit the Commissioner of Health to issue provisional emergency medical services provider certifications to qualified individuals with modified certification periods as approved; and to allow emergency medical services to transport patients to locations other than healthcare facilities with prior approval by Department of Health;

- Section 3002, 3002-a, 3003, and 3004-a of Public Health Law to the extent necessary to allow any emergency medical treatment protocol development or modification to occur solely with the approval of the Commissioner of Health;

- Sections 405.13 and 755.4 of Title 10 of the NYCRR to the extent necessary to permit an advanced practice registered nurse with a doctorate or master's degree specializing in the administration of anesthesia administering anesthesia in a general hospital or free-standing ambulatory surgery center without the supervision of a qualified physician in these health care settings;

- Paragraph 1 of Section 6542 of the Education Law and Subdivisions (a) and (b) of Section 94.2 of Title 10 of the NYCRR to the extent necessary to permit a physician assistant to provide medical services appropriate to their education, training and experience without oversight from a supervising physician without civil or criminal penalty related to a lack of oversight by a supervising physician;

- Paragraph 1 of Section 6549 of the Education Law and Subdivisions (a) and (b) of Section 94.2 of Title 10 of the NYCRR to the extent necessary to permit a specialist assistant to provide medical services appropriate to their education, training and experience without oversight from a supervising physician without civil or criminal penalty related to a lack of oversight by a supervising physician;

- Subdivision (3) of Section 6902 of Education Law, and any associated regulations, including, but not limited to, Section 64.5 of Title 10 of the NYCRR, to the extent necessary to permit a nurse practitioner to provide medical services appropriate to their education, training and experience, without a written practice agreement, or collaborative relationship with a physician, without civil or criminal penalty related to a lack of written practice agreement, or collaborative relationship, with a physician;

- Subdivision (15) of section 3001, and Sections 800.3, 800.15 and 800.16 of Title 10 of the NYCRR with approval of the department, to the extent necessary to define "medical control" to include emergency and non-emergency direction to all emergency medical services personnel by a regional or state medical control center and to permit emergency medical services personnel to operate under the advice and direction of a nurse practitioner, physician assistant, or paramedic, provided that such medical professional is providing care under the supervision of a physician and pursuant to a plan approved by the Department of Health;

- Subdivision (2) of section 6527, Section 6545, and Subdivision (1) of Section 6909 of the Education Law, to the extent necessary to provide that all physicians, physician assistants, specialist assistants, nurse practitioners, licensed registered professional nurses and licensed practical nurses shall be immune from civil liability for any injury or death alleged to have been sustained directly as a result of an act or omission by such medical professional in the course of providing medical services in support of the State's response to the COVID-19 outbreak, unless it is established that such injury or death was caused by the gross negligence of such medical professional;

- Any healthcare facility is authorized to allow students, in programs to become licensed in New York State to practice as a healthcare professional, to volunteer at the healthcare facility for educational credit as if the student had secured a placement under a clinical affiliation agreement, without entering into any such clinical affiliation agreement;

- Notwithstanding any law or regulation to the contrary, health care providers are relieved of recordkeeping requirements to the extent necessary for health care providers to perform tasks as may be necessary to respond to the COVID-19 outbreak, including, but not limited to, requirements to maintain medical records that accurately reflect the evaluation and treatment of patients, or requirements to assign diagnostic codes or to create or maintain other records for billing purposes. Any person acting reasonably and in good faith under this provision shall be afforded absolute immunity from liability for any failure to comply with any recordkeeping requirement. In order to protect from liability any person acting reasonably and in good faith under this provision, requirements to maintain medical records under Subdivision 32 of Section 6530 of the Education Law, Paragraph (3) of Subdivision (a) of Section 29.2 of Title 8 of the NYCRR, and Sections 58-1.11, 405.10, and 415.22 of Title 10 of the NYCRR, or any other such laws or regulations are suspended or modified to the extent necessary for health care providers to perform tasks as may be necessary to respond to the COVID-19 outbreak;

- Section 405.45 of Title 10 of the NYCRR to the extent necessary to permit the Commissioner of Health to designate a health care facility as a trauma center, or extend or modify the period for which a health care facility may be designated as a trauma center, or modify the review team for assessment of trauma center;

- Sections 800.3, 800.8, 800.9, 800.10, 800.12, 800.17, 800.18, 800.23, 800.24, and 800.26 of Title 10 of the NYCRR to the extent necessary to extend all existing emergency medical services provider certifications for one year; to permit the Commissioner of Health to modify the examination or recertification requirements for emergency medical services provider certifications; to suspend or modify, at the discretion of the Commissioner of Health, any requirements for the recertification of previously certified emergency medical services providers; and, at the discretion of the Commissioner of Health, develop a process determined by the Department of Health, to permit any emergency medical services provider certified or licensed by another State to provide emergency medical services within New York state; at the discretion of the Commissioner of Health, to suspend or modify equipment or vehicle requirements in order to ensure sustainability of EMS operations;

- Paragraph (6) of subdivision (b) of part 405.4 of Title 10 of the NYCRR to the extent necessary to remove limits on working hours for physicians and postgraduate trainees;

- Subparagraph (ii) of paragraph (2) of subdivision (g) of 10 N.Y.C.R.R. section 405.4, to the extent necessary to allow graduates of foreign medical schools having at least one year of graduate medical education to provide patient care in hospitals, is modified so as to allow such graduates without licenses to provide patient care in hospitals if they have completed at least one year of graduate medical education;

- Subdivision (e) of section 405.2 of Title 10 of the NYCRR, to the extent necessary to permit general hospitals affected by the disaster emergency to maintain adequate staffing;

- Subdivision (b) of section 405.3 of Title 10 of the NYCRR, to the extent necessary to allow general hospitals to use qualified volunteers or personnel affiliated with different general hospitals, subject to the terms and conditions established by the Commissioner of Health;

- Section 3507 of the Public Health Law and Part 89 of Title 10 of the NYCRR to the extent necessary to permit radiologic technologists licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Sections 3502 and 3505 of the Public Health Law and Part 89 of Title 10 of the NYCRR to the extent necessary to permit radiologic technologists licensed and in current good standing in any state in the United State to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 8502, 8504, 8504-a, 8505, and 8507 of the Education Law and Subpart 79-4 of Title 8 of the NYCRR, to the extent necessary to allow respiratory therapists licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Section 6502 of the Education Law and 8 NYCRR 59.8, to the extent necessary to allow physician's assistants licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Section 6502 of the Education Law and 8 NYCRR 59.8, to the extent necessary to allow registered professional nurses, licensed practical nurses and nurse practitioners licensed and in current good standing in New York State but not registered in New York State to practice in New York State without civil or criminal penalty related to lack of registration;

- Subdivision (2-b) of Section 4002 of the Public Health Law to the extent necessary to allow a hospice residence to designate any number of beds within such facility as dually certified inpatient beds;

- Title V of Article 5 of the Public Health Law and subparts 19 and 58 of Title 10 of the NYCRR, to the extent necessary to allow laboratories holding a Clinical Laboratory Improvement Acts (CLIA) certificate and meeting the CLIA quality standards described in 42 CFR Subparts H, I, J, K and M, to perform testing for the detection of SARS-CoV-2 in specimens collected from individuals suspected of suffering from a COVID-19 infection;

- Article 139 of the Education Law, Section 576-b of the Public Health Law and Section 58-1.7 of Title 10 of the NYCRR, to the extent necessary to permit registered nurses to order the collection of throat or nasopharyngeal swab specimens from individuals suspected of being infected by COVID-19, for purposes of testing; and

- Subdivision (1) of Section 6801 of the Education Law, Section 6832 of the Education Law and Section 29.7(a)(21)(ii)(b)(4) of Title 8 of the NYCRR, to the extent necessary to permit a certified or registered pharmacy technician, under the direct personal supervision of a licensed pharmacist, to assist such licensed pharmacist, as directed, in compounding, preparing, labeling, or dispensing of drugs used to fill valid prescriptions or medication orders for a home infusion provider licensed as a pharmacy in New York, compliant with the United States Pharmacopeia General Chapter 797 standards for Pharmaceutical Compounding – sterile preparations, and providing home infusion services through a home care agency licensed under Article 36 of the Public Health Law.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through April 22, 2020:

- Any healthcare facility is authorized to allow students, in programs to become licensed in New York State to practice a healthcare professional, to volunteer at the healthcare facility for educational credit as if the student had secured a placement under a clinical affiliation agreement, without entering into any such clinical affiliation agreement;

- The Commissioner of Health is authorized to direct, and shall so direct, all general hospitals, ambulatory surgery centers, office-based surgery practices and diagnostic and treatment centers to increase the number of beds available to patients, including by canceling all elective surgeries and procedures, as the Commissioner of Health shall define. General hospitals shall comply with such order by submitting COVID-19 Plans to the New York State Department of Health (NYSDOH), on a schedule to be determined by NYSDOH, to accomplish this purpose;

- The Commissioner of Health is authorized to suspend or revoke the operating certificate of any general hospital should they be unable to meet the requirements of the necessary capacity directives; and notwithstanding any law to the contrary the Commissioner may appoint a receiver to continue the operations on 24 hours' notice to the current operator, in order to preserve the life, health and safety of the people of the State of New York.

- No pharmacist shall dispense hydroxychloroquine or chloroquine except when written as prescribed for an FDA-approved indication; or as part of a state approved clinical trial related to COVID-19 for a patient who has tested positive for COVID-19, with such test result documented as part of the prescription. No other experimental or prophylactic use shall be permitted, and any permitted prescription is limited to one fourteen day prescription with no refills.

- Any licensed health insurance company shall deliver to the Superintendent, no later than March 24, 2020 a list of all persons who have a professional licensure or degree, whether physician's assistant, medical doctor, licensed registered nurse, licensed nurse practitioner or licensed practical nurse, and whether or not the person has a currently valid, or recently (within past five years) expired license in the state of New York. The Department of Financial Services shall poll such individuals to determine whether or not such professionals would serve in the COVID-19 response effort.

- Non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations or other social events) are canceled or postponed at this time.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this twenty-

third day of March in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.11

EXECUTIVE ORDER

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 26, 2020 the following:

- Sections 16.03 and 16.05 of the Mental Hygiene Law and Part 619 of Title 14 of the NYCRR to the extent that they limit the provision of certain services to certified settings provided, however, that use of such settings shall require the approval of the commissioner of OPWDD;

- Section 633.16 of Title 14 of the NYCRR to the extent necessary to permit abbreviated training and/or extension of recertification deadlines for direct support professionals employed in programs and facilities certified pursuant to Article 16 of the Mental Hygiene Law that are experiencing staff shortages;

- Sections 131-u and 459(b) of the Social Services Law and Sections 408.6, 408.7 and 408.8 Of Title 18 of the NYCRR insofar as the statute and regulations limit the duration and amount of reimbursement for residential programs for victims of domestic violence to the per diem rate established by the Office of Children and Family Services;

- Section 6808(1) of the Education Law and any associated regulations, to the extent necessary to temporarily permit registered resident pharmacies and registered resident outsourcing facilities to compound certain alcohol-based hand sanitizer products, consistent with the Food and Drug Administration's Policy for Temporary Compounding of Certain Alcohol-Based Hand Sanitizer Products During the Public Health Emergency (March 2002);

- Sections 6802, 6808, and 6841 of the Education Law and Parts 29.7 (10) and 63.6 of Title 8 of the NYCRR, to the extent necessary to permit pharmacy technicians and pharmacists to practice at an alternative location, including their home, as long as there is adequate security to prevent any Personal Health Information from being compromised;

- Subdivision 5 of Section 6907 of the Education Law and associated regulation, to the extent necessary to permit graduates of registered professional nurse and licensed practical nurse licensure qualifying education programs registered by the State Education Department to be employed to practice nursing under the supervision of a registered professional nurse and with the endorsement of the employing hospital or nursing home for 180 days immediately following graduation;

- Subdivision 11 of section 17 of the Public Officers Law, and any associated regulations, to the extent necessary to ensure that physicians assisting in the State's response to COVID-19 in a facility owned or leased by SUNY and operated by SUNY are not excluded from the provisions of section 17 of the Public Officers Law for the medical services provided as part of the State's response to COVID-19;

- Paragraph a of subdivision 1 of section 17 of the Public Officers Law, and any associated regulations, to the extent that SUNY has designated a state volunteer program under this paragraph for SUNY Upstate Hospital, SUNY Stony Brook University Hospital, and University Hospital SUNY Downstate, that is comprised of both compensated and uncompensated volunteers;

- Subdivision (3) of section 6305 of the Education Law and subdivision (c) of section 602.12 of Title 8 of the NYCRR, and any other applicable state or local law, rule, or regulation, to the extent necessary to suspend the thirty-day requirement for submission of certificates of residence to community colleges in New York State, and to allow for electronic mail and mail by post applications for certificates of residence in every county for the duration of the COVID-19 emergency;

- Sections 2800(1)(a) and (2)(a); 2801(1) and (2); 2802(1) and (2); 2824(2) of the Public Authorities Law, to the extent consistent and necessary to allow the director of the Authorities Budget Office to disregard such deadlines due to a failure by a state or local authority to meet the requirements proscribed within these sections during the period when a properly executed declaration of a state of emergency has been issued;

- Section 103(2) of the General Municipal Law, Section 144(1) of the State Finance Law, Section 376(8)(a) of the Education Law, and Section 359(1) of the Public Authorities Law to the extent necessary to allow the non-public opening of bids; provided, however, that, where practical, public entities shall record or live stream bid openings so that the public has the opportunity to view such bid openings;

- To allow individuals and businesses licensed by the Department of State to extend the expiration date of their license:
  - Articles 6-D, 7, 7-A, 8-B, 8-C, 27, 28, 35-B, 35-C, 37-A, 39-E, 39-G, 41, and Section 399-pp of the General Business Law are amended, as necessary, to extend the time to renew a license to the 30th day following the expiration of this Executive Order;
  - Articles 6-F, 6-H, and Sections 130-131 of the New York Executive Law are amended, as necessary, to extend the time to renew a license to the 30th day following the expiration of this Executive Order;
  - Articles 12-A, 12-B, and 12-C of the Real Property Law are amended, as necessary, to extend the time to renew a license to the 30th day following the expiration of this Executive Order; and
  - Article 25 of the New York Arts and Cultural Affairs Law is amended, as necessary, to extend the time to renew a license to the 30th day following the expiration of this Executive Order;

- Section 1210.13 of Title 19 of the NYCRR, to the extent that continuing education requirements cannot be met due to the cancellation or postponement of courses during this COVID-19 emergency, to allow manufacturers, retailers, installers, and mechanics currently certified by the Department of State to continue to renew their existing certifications;

- Title 16, the Urban Development Corporation Act, to the extent a public hearing is required to effectuate a proposed project, provided that the Urban Development Corporation provides an alternative opportunity for the public to comment on proposed project and publishes notice of that opportunity consistent with notice requirements in the Act;

- Section 94 of the Executive Law, to the extent that certain trainings are required by Section 94 (10)(a-c), failure to meet such deadlines will not be held to be a violation of the Executive Law provided such trainings are complete in 30 days;

- Section 352-e(2) of the General Business Law to the extent that it requires response to co-op/condominium offering plans in 30 days, provided, however, the timeframe for such response may be extended up to 30 days;

- Sections 806, 808, 809, and 814 of the Executive Law, Section 24-0801 of the Environmental Conservation Law, and associated regulations to the extent necessary to suspend the statutory and regulatory time periods required for the Adirondack Park Agency to respond to requests for variances, permit modifications and otherwise process permit requests;

- Sections 6951, 6952, 6953 and 6955 of the Education Law, to the extent necessary to the extent necessary to allow midwives licensed and in current good standing in any state in the United States, or in any province or territory of Canada, to practice in New York State without civil or criminal penalty related to lack of licensure;

- Section 140(3) of the Transportation Law to the extent necessary to toll for a 30-day period corresponding to the duration of this Executive Order the requirement of a vehicle inspection within a period of six months last preceding, only for those vehicles voluntarily placed out of service due to the COVID-19 outbreak;

- Section 212 of the Retirement and Social Security Law, for the purpose of disregarding any income earned during the period of the emergency from the earnings limitation calculated under such section;

- Subdivision (a) of Section 301 of the Vehicle and Traffic Law, to the extent that it require annual safety inspections and at least biennial emissions inspections, so that vehicles may continue to be lawfully operated after the expiration of inspection certificates that were valid as of the date of this order but that expire hereafter; and

- Section 307(1) of the State Technology Law to the extent necessary to allow an electronic signature to be used by a person in lieu of a signature affixed by hand in executing documents and forms authorizing or accepting funeral services.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through April 26, 2020:

- The directive contained in Executive Order 202.4 related to the closure of schools statewide shall hereafter be modified to provide that all schools shall remain closed until April 15, 2020, at which time the continued closure shall be re-evaluated. No school shall be subject to a diminution in school aid due to failure to meet the 180 day in session requirement as a result of the COVID-19 outbreak, provided their closure does not extend beyond the term set forth herein. School districts must continue plans for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of essential workers, and continue to first use any vacation or snow days remaining.

- The directive contained in Executive Order 202.10 related to restrictions on dispensing hydroxychloroquine or chloroquine for prophylactic purposes is amended as follows: No pharmacist shall dispense hydroxychloroquine or chloroquine except when written: as prescribed for an FDA-approved indication; for an indication supported by one or more citations included or approved for inclusion in the compendia specified in 42 U.S.C. 1396r–8(g)(1)(B)(i); for patients in inpatient settings and acute settings; for residents in a subacute part of a skilled nursing facility; or as part of an study approved by an Institutional Review Board. Any person authorized to prescribe such medications shall denote on the prescription the condition for which the prescription has been issued.

- During the period when an Executive Order limiting operation of a type of facility or limiting the number of persons who may occupy any space is in effect, any operation of such a facility or occupancy of any such space by more than the number of persons allowed by said Executive Order shall be deemed to be a violation of law and in particular, but not by way of limitation, shall be deemed to be a violation of the Uniform Code or other local building code in effect in the jurisdiction in which the facility or space is located. In the event of any such violation, any state, county, or local police officer authorized to enforce laws within the jurisdiction in which the space or facility is located is authorized to remove persons from such space or facility. In addition, in the event of such violation, any state, county, or local code enforcement official or fire marshal authorized to enforce the Uniform Code or other local building code within the jurisdiction in which the facility or space is located is authorized to issue an appearance ticket, a Notice of Violation, an Order to Remedy such violation, which shall require immediate compliance, and/or a Do Not Occupy Order to any owner, operator, or occupant of any such facility or space. Nothing in this provision shall limit the authority of any governmental unit or agency to take such other and/or additional enforcement actions to the extent necessary to ensure compliance with such occupancy-related directives or facility operation-related directives.

- Any guidance issued by the New York State Department of Health related to prevention and infection control of COVID-19 shall be effective immediately and shall supersede any prior conflicting guidance issued by the New York State Department of Health and any guidance issued by any local board of health, any local department of health, or any other political subdivision of the State related to the same subject.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-seventh day of March in the

year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.12

### E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 27, 2020 the following:

- Subdivision (1) of Section 4-117 of the Election law to the extent necessary so that the time to mail the annual check of registrants and notice by mail shall be as directed by the New York State Board of Elections.

- Paragraph 28 of section 171 of the Tax Law, to the extent it limits the allowable period that the Tax Commissioner can disregard when a disaster emergency has been declared, in order to authorize the Tax Commissioner to disregard a period or more than 90 days, but not more than 100 days.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through April 27, 2020:

- Any presidential primary to be held on April 28, 2020, shall be postponed and rescheduled for June 23, 2020.

- Any special election to be held on April 28, 2020, including for the Twenty-Seventh Congressional District, the Twelfth Assembly District, the Thirty-First Assembly District, the One Hundred and Thirty-Sixth Assembly District, and the Fiftieth Senate District shall be postponed and rescheduled for June 23, 2020, and the ballots shall remain the same.

- Any article twenty-eight facility licensed by the state, shall, as a condition of licensure permit the attendance of one support person who does not have a fever at the time of labor/delivery to be present as a support person for a patient who is giving birth.



GIVEN under my hand and the Privy Seal of the State in the City of Albany this twenty-eighth day of March in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.13

## E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through April 28, 2020 the following:

- Sections 16.03 and 16.05 of the Mental Hygiene Law and Part 619 of Title 14 of the NYCRR to the extent that they limit the provision of certain services to certified settings provided, however, that use of such settings shall require the approval of the commissioner of OPWDD;

- Sections 16.33, 16.34, 31.35 and 19.20 of the Mental Hygiene law; sections 378-a, 424-a and 495 of the Social Services law; sections 550, 633.5, 633.24 and 805 of Title 14 of the NYCRR;  Article 3, sections 442.18, 447.2, 448.3, 449.4, 450.9, 451.6 of Title 18 of the NYCRR ; and sections 166-1.2, 180-1.5, 180-3.4, 182-1.5, 182-1.9, 182-1.11, 182-2.5, -182-2.9 and 6051.1 of Title 9 of the NYCRR, to the extent necessary to allow current employees of OPWDD or OPWDD approved providers, OCFS licensed or certified programs, OASAS certified, funded or authorized programs, OMH or OMH licensed, funded or approved programs who have previously undergone such background checks to be employed by a different OPWDD approved provider and/or OCFS licensed or certified program and/or OASAS certified, funded or authorized program and/or OMH licensed, funded or approved program without undergoing new background checks.  These provisions are also waived to the extent necessary to allow providers the discretion to permit already qualified individuals and who are not listed on the Staff Exclusion List to work unsupervised while an updated background check is completed;

- Sections 3203 and 4510 of the Insurance Law are modified to extend the grace period for the payment of premiums and fees to 90 days for any life insurance policyholder or fraternal benefit society certificate holder, as those terms are used in such sections, facing a financial hardship as a result of the COVID-19 pandemic;

- Sections 3203, 3219, and 3220 of the Insurance Law are modified to provide a life insurance policyholder or annuity contract holder or a certificate holder, as those terms are used in such sections, under a group policy or contract with 90 days to exercise rights or benefits under the applicable life insurance policy or annuity contract for any policyholder or contract holder or certificate holder under the group policy or contract who is unable timely to exercise rights or benefits as a result of the COVID-19 pandemic;

- Section 1116 and Articles 34, 53, 54, and 55 of the Insurance Law and Sections 54 and 226 of the Workers' Compensation Law are modified to impose a moratorium on an insurer cancelling, non-renewing, or conditionally renewing any insurance policy issued to an individual or small business, or, in the case of a group insurance policy, insuring certificate holders that are individuals or small businesses, for a period of 60 days, for any policyholder, or in the case of a group insurance policy, group policyholder or certificate holder, facing financial hardship as a result of the COVID-19 pandemic. The foregoing relief shall also apply to the kinds of insurance set forth in paragraphs (16), (17), (20), (21), (24), (26), and (30) of Section 1113(a) of the Insurance Law. For purposes of this Executive Order, a small business shall mean any business that is resident in this State, is independently owned and operated, and employs one hundred or fewer individuals;

- Section 576 of the Banking Law is modified to grant the Superintendent of Financial Services the authority to promulgate an emergency regulation to apply the provisions of the Executive Order relevant to policy cancellations, to premium finance agencies (as defined in Article XII-B of the Banking Law), subject to the safety and soundness considerations of the premium finance agencies;

- Subdivisions three and four of section 42 of the Public Officer's Law to the extent that it requires that a proclamation be separately issued by the Governor for an election to fill a vacancy; and

- Subdivision (i) of section 414 of the Education Law to the extent necessary to allow the school districts to pay for the cost of such child care services.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through April 28, 2020:

- All instruments that are signed and delivered to the superintendent under the New York Banking Law (the "Banking Law"), and are required to be verified or acknowledged under the Banking Law, may be verified or acknowledged by including standard verification or acknowledgement language in the instrument and transmitting a legible copy of the signed instrument by fax or electronic means.

- The special election in the City of New York to fill the vacancy in the Office of Borough President of Queens is rescheduled for June 23, 2020. Only candidates who were eligible to appear on the ballot for the March 24, 2020 special election shall appear on the ballot for the June 23, 2020 special election.

- Any special election which was previously scheduled to occur on April 28, 2020 and rescheduled for June 23, 2020 by virtue of Executive Order 202.12 shall only contain the names of those individuals who had previously been qualified to appear on the ballot on April 28, 2020.

- Circulation, filing, and collection of any designating petitions, or independent nominating petitions for any office that would otherwise be circulated or filed pursuant to the Election Law, Education Law or any other consolidated law for any office commencing March 31, 2020 are hereby postponed.

- Any school board, library board, or village election scheduled to take place in April or May of 2020 is hereby postponed until at least June 1, 2020, and subject to further directive as to the timing, location or manner of voting for such elections.

- Any worker who is employed by the state of New York, shall, if deemed non-essential by their agency shall work from home or shall be able to stay home without charging their accruals until April 16, 2020.

- Executive Order 202.6 is hereby modified to clarify that construction which was an essential service not subject to the in-person work restrictions is modified to provide only **certain** construction is considered exempt from the in-person restrictions as of March 28, 2020. Further, on and after March 27, 2020, Empire State Development Corporation is hereby authorized to determine which construction projects shall be essential and thereby exempt from the in-person workforce prohibition, contained in EO 202.6 and subsequent Executive Orders which further reduced the workforce requirements. All continuing construction projects shall utilize best practices to avoid transmission of COVID-19.

- By virtue of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11 which closed or otherwise restricted public or private businesses or places of public accommodation, all such Executive Orders shall be continued, provided that the expiration dates of such Executive Orders shall be aligned, such that all in-person business restrictions will be effective until 11:59 p.m. on April 15, 2020, unless later extended by future Executive Orders.

- The directive of Executive Order 202.12 requiring a support person for a patient giving birth is modified insofar as to cover labor, delivery as well as the immediate postpartum period.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-ninth day of March in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.14

E X E C U T I V E  O R D E R

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order to 202, for thirty days until May 7, 2020, except as limited below.

**IN ADDITION,** I hereby temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, for the period from the date of this Executive Order through May 7, 2020, the following:

- Section 6524 of the Education Law, section 60.7 of title 8 of NYRR and section paragraph (1) of subdivision (g) 405.4 of title 10 of the NYCRR to the extent necessary to allow any physician who will graduate in 2020 from an academic medical program accredited by a medical education accrediting agency for medical education by the Liaison Committee on Medical Education or the American Osteopathic Association, and has been accepted by an Accreditation Council for Graduate Medical Education accredited residency program within or outside of New York State to practice at any institution under the supervision of a licensed physician;

- Subdivisions one, two, four, five, eight and nine of Section 1726 of the Surrogate's Court Procedure Act are hereby modified to provide that any parent, a legal guardian, a legal custodian, or primary caretaker who works or volunteers in a health care facility or who reasonably believes that they may otherwise be exposed to COVID-19, may designate a standby guardian by means of a written designation, in accordance with the process set forth in such subdivisions; and such designation shall become effective also in accordance with the process set forth in such subdivisions; and

- Sections 3216(d)(1)(C) and 4306(g) of the Insurance Law, subject to consideration by the Superintendent of Financial Services of the liquidity and solvency of the applicable insurer, corporation subject to Article 43 of the Insurance Law, or health maintenance organization certified pursuant to Article 44 of the Public Health Law, to:

**EXHIBIT A:   Page 38 of 85**

- o  Extend the period for the payment of premiums to the later of the expiration of the applicable contractual grace period and 11:59 p.m. on June 1, 2020, for any comprehensive health insurance policyholder or contract holder under an individual policy or contract, as those terms are used in such sections, who is facing a financial hardship as a result of the COVID-19 pandemic; and

- o  Require that the applicable insurer, corporation subject to Article 43 of the Insurance Law, or health maintenance organization certified pursuant to Article 44 of the Public Health Law shall be responsible for the payment of claims during such period and shall not retroactively terminate the insurance policy or contract for non-payment of premium during such period.

**FURTHER**, I hereby issue the following directives for the period from the date of this Executive Order through May 7, 2020:

- Any medical equipment (personal protective equipment (PPE), ventilators, respirators, bi-pap, anesthesia, or other necessary equipment or supplies as determined by the Commissioner of Health) that is held in inventory by any entity in the state, or otherwise located in the state shall be reported to DOH. DOH may shift any such items not currently needed, or needed in the short term future by a health care facility, to be transferred to a facility in urgent need of such inventory, for purposes of ensuring New York hospitals, facilities and health care workers have the resources necessary to respond to the COVID-19 pandemic, and distribute them where there is an immediate need. The DOH shall either return the inventory as soon as no longer urgently needed and/or, in consultation with the Division of the Budget, ensure compensation is paid for any goods or materials acquired at the rates prevailing in the market at the time of acquisition, and shall promulgate guidance for businesses and individuals seeking payment.

- By virtue of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, and 202.13 which closed or otherwise restricted public or private businesses or places of public accommodation, and which required postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events), all such Executive Orders shall be continued, provided that the expiration dates of such Executive Orders shall be aligned, such that all in-person business restrictions and workplace restrictions will be effective until 11:59 p.m. on April 29, 2020, unless later extended by a future Executive Order.

- The enforcement of any violation of the foregoing directives on and after April 7, 2020, in addition to any other enforcement mechanism stated in any prior executive orders, shall be a violation punishable as a violation of public health law section 12-b(2) and the Commissioner of Health is directed and authorized to issue emergency regulations. The fine for such violation by an individual who is participating in any gathering which violates the terms of the orders or is failing to abide by social distancing restrictions in effect in any place which is not their home shall not exceed $1,000.

- The directive contained in Executive Order 202.4 as amended by Executive Order 202.11 related to the closure of schools statewide shall hereafter be modified to provide that all schools shall remain closed through April 29, 2020, at which time the continued closure shall be re-evaluated. No school shall be subject to a diminution in school aid due to failure to meet the 180 day in session requirement as a result of the COVID-19 outbreak, provided their closure does not extend beyond the term set forth herein. School districts must continue plans for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of essential workers, and continue to first use any vacation or snow days remaining.

- Superintendent of Financial Services shall have the authority to promulgate an emergency regulation, subject to consideration by the Superintendent of Financial Services of the liquidity and solvency of the applicable insurer, corporation subject to Article 43 of the Insurance Law, health maintenance organization certified pursuant to Article 44 of the Public Health Law, or student health plan certified pursuant to Insurance Law § 1124, to:

  - o  extend the period for the payment of premiums to the later of the expiration of the applicable contractual grace period and 11:59 p.m. on June 1, 2020 for any small group or student blanket comprehensive health insurance policy or contract, or any child health insurance plan policy or contract where the policyholder or contract holder pays the entire premium, as those terms are used in the Insurance Law, for any policyholder or contract holder who is facing financial hardship as a result of the COVID-19 pandemic; and

- o require that the applicable insurer, corporation subject to Article 43 of the Insurance Law, health maintenance organization certified pursuant to Article 44 of the Public Health Law, or student health plan certified pursuant to Insurance Law § 1124, shall be responsible for the payment of claims during such period and shall not retroactively terminate the insurance policy or contract for non-payment of premium during such period.

- Superintendent of Financial Services shall have the authority to promulgate emergency regulations necessary to implement this Executive Order, including regulations regarding: (1) the waiver of late fees; and (2) the prohibition on reporting negative data to credit bureaus.

- For the purposes of Estates Powers and Trusts Law (EPTL) 3-2.1(a)(2), EPTL 3-2.1(a)(4), Public Health Law 2981(2)(a), Public Health Law 4201(3), Article 9 of the Real Property Law, General Obligations Law 5-1514(9)(b), and EPTL 7-1.17, the act of witnessing that is required under the aforementioned New York State laws is authorized to be performed utilizing audio-video technology provided that the following conditions are met:

  - o The person requesting that their signature be witnessed, if not personally known to the witness(es), must present valid photo ID to the witness(es) during the video conference, not merely transmit it prior to or after;

  - o The video conference must allow for direct interaction between the person and the witness(es), and the supervising attorney, if applicable (e.g. no pre-recorded videos of the person signing);

  - o The witnesses must receive a legible copy of the signature page(s), which may be transmitted via fax or electronic means, on the same date that the pages are signed by the person;

  - o The witness(es) may sign the transmitted copy of the signature page(s) and transmit the same back to the person; and

  - o The witness(es) may repeat the witnessing of the original signature page(s) as of the date of execution provided the witness(es) receive such original signature pages together with the electronically witnessed copies within thirty days after the date of execution.

G I V E N   under my hand and the Privy Seal of the State in the City of Albany this seventh day of April in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.15

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 9, 2020 the following:

- Paragraph (4) of subdivision (a) of Section 5-6.12 of Title 10 of the NYCRR, governing bottled or bulk water products sold or distributed in New York, to allow bottled and bulk water product facilities currently certified in in New York to temporarily, if their stock of regularly used labels has been depleted, distribute bottled or bulk water products without an assigned New York State Department of Health certificate number shown on the product label and use labels authorized in any other state. Once labels showing the assigned certificate number have been obtained, their use must be resumed;

- Section 6808 of the Education Law and any regulations promulgated thereunder, to the extent necessary to permit a manufacturer, repacker, or wholesaler of prescription drugs or devices, physically located outside of New York and not registered in New York, but licensed and/or registered in any other state, may deliver into New York, prescription drugs or devices;

- Section 6808 of the Education Law, Article 137 of the NYCRR to the extent necessary to allow that a New York-licensed pharmacy may receive drugs and medical supplies or devices from an unlicensed pharmacy, wholesaler, or third-party logistics provider located in another state to alleviate a temporary shortage of a drug or device that could result in the denial of health care under the following conditions:
  - The unlicensed location is appropriately licensed in its home state, and documentation of the license verification can be maintained by the New York pharmacy.
  - The pharmacy maintains documentation of the temporary shortage of any drug or device received from any pharmacy, wholesaler, or third-party logistics provider not licensed in New York.
  - The pharmacy complies with all record-keeping requirements for each drug and device received from any pharmacy, wholesaler, or third-party logistics provider not licensed in New York.
  - All documentation and records required above shall be maintained and readily retrievable for three years following the end of the declared emergency.
  - The drug or device was produced by an authorized FDA registered drug manufacturer;

- Sections 6512 through 6516, and 6524 of the Education Law and Part 60 of Title 8 of the NYCRR, to the extent necessary to allow individuals, who graduated from registered or accredited medical programs located in New York State in 2020, to practice medicine in New York State, without the need to obtain a license and without civil or criminal penalty related to lack of licensure, provided that the practice of medicine by such graduates shall in all cases be supervised by a physician licensed and registered to practice medicine in the State of New York;

- Subparagraphs (ii) and (iii) of paragraph (b) and paragraph (c) of subdivision (4) of section 2801-a of the Public Health Law, and subparagraph (ii) of paragraph (c) of subdivision (1) and paragraph (c) of subdivision (2) of section 3611-a of the Public Health Law, to the extent necessary to limit the Department of Health's review functions to essential matters during the pendency of the COVID-19 health crisis, and to toll any statutory time limits for transfer notices pertaining to operators of Article 28 and Article 36 licensed entities for the duration of this declaration of disaster emergency, and any subsequent continuation thereof;

- Sections 43 and 45 of the Religious Corporations Law to the extent necessary to allow Protestant Episcopal parishes to postpone any annual election and notice to the parish of such election during the state disaster emergency absent formal resolution and ratification by meeting;

- Environmental Conservation Law Articles 3, 8, 9, 13, 15, 17, 19, 23, 24, 25, 27, 33, 34, 35, 37, and 75, and 6 NYCRR Parts 552 , 550, 601, and 609 to the extent necessary to suspend the requirement that public hearings are required, provided that public comments shall still be accepted either electronically or by mail, to satisfy public participation requirements;

- State Administrative Procedures Act Section 202(2)(a) to the extent necessary to extend the expiration date of notices of proposed rulemakings until 90 calendar days after this Executive Order, as it may be continued, terminates;

- Environmental Conservation Law Article 70, as implemented by 6 NYCRR Parts 621 and 624, and Environmental Conservation Law Article 17, as implemented by 6 NYCRR Parts 704 and 750 for processing permit applications, to the extent necessary to suspend public hearings provided that public comments may be accepted as written submissions, either electronically or by mail, or that any required appearances may be done so by teleconferencing or other electronic means;

- 6 NYCRR Part 375 and Environmental Conservation Law Article 27 to the extent necessary to suspend for the duration of this Executive Order public meetings prior to a selection of a final remedy at inactive hazardous waste disposal sites and public meetings at certain brownfield cleanup program sites, provided that written comments on proposed remedies may be continue to be submitted and will be evaluated in remedial decision;

- Section 3635 of the Education law, to the extent necessary to delay the April 1 requirement that parents must file transportation requests with their school district in order to obtain transportation for their children for the following school year;

- Sections 6512 through 6516 and 8510 of the Education Law and 8 NYCRR Subpart 79-4 to the extent necessary to allow respiratory therapy technicians licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 6512 through 6516, 8402, 8403, 8404, 8405 of the Education Law and 8 NYCRR Sub Parts 79-9, 79-10, 79-11 and 79-12 to the extent necessary to allow mental health counselors, marriage and family therapists, creative arts therapists and psychanalysts licensed and in current good standing in any state in the United States to practice in New York State without civil or criminal penalty related to lack of licensure;

- Sections 3400, 3420 through 3423, and 3450 through 3457 of the Public Health Law, to the extent necessary to permit funeral directors licensed and in good standing in any state or territory of the United States to practice as a funeral director in New York State upon the approval of, and pursuant to such conditions as may be imposed by, the Commissioner of Health, without civil or criminal penalty related to lack of licensure in New York State, provided that such funeral director shall practice under the supervision of a funeral director licensed and registered in New York State;

- Section 3428 of the Public Health Law to the extent necessary to permit a funeral director licensed in New York State, but not registered in New York State, to practice in New York State upon the approval of, and pursuant to such conditions as may be imposed by, the Commissioner of Health, without civil or criminal penalty related to lack of registration in New York State,

provided that such funeral director shall practice under the supervision of a funeral director licensed and registered in New York State;

- Section 1517 of the Not for Profit Corporation Law, Sections 203.3, 203.6 and 203.13 of Title 19 of the NYCRR and Section 77.7(a)(1) of Title 10 of the NYCRR, to the extent necessary to allow persons deputized by the Commissioner of Health to be agents authorized by a funeral director or undertaker to be present and personally supervise and arrange for removal or transfer of each dead human body;

- Section 1517 of the Not for Profit Corporation Law, Sections 203.3, 203.6 and 203.13 of Title 19 of the NYCRR and Section 77.7(a)(4) of Title 10 of the NYCRR, to the extent necessary to allow persons deputized by the Commissioner of Health to be agents authorized by a funeral director or undertaker, or a county coroner, coroner physician and/or medical director for those deceased human bodies within their supervision, to personally supervise and arrange the delivery of a deceased person to the cemetery, crematory or a common carrier, with a copy of the filed death certificate;

- Sections 4140 and 4144 of the Public Health Law, Sections 1502, 1517 of the Not for Profit Corporation Law and Sections 203.1, 203.4, 203.8 and 203.13 of Title 19 of the NYCRR and Section 13.1 of Title 10 of the NYCRR, to the extent necessary to permit the State Registrar to register death certificates and issue burial and removal permits, upon the request of a local registrar and upon approval of the Commissioner of Health;

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 9, 2020:

- Any local official, state official or local government or school, which, by virtue of any law has a public hearing scheduled or otherwise required to take place in April or May of 2020 shall be postponed, until June 1, 2020, without prejudice, however such hearing may continue if the convening public body or official is able to hold the public hearing remotely, through use of telephone conference, video conference, and/or other similar service.

- For the period from the date of this Executive Order through May 9, 2020, the Department of Taxation and Finance is authorized to accept digital signatures in lieu of handwritten signatures on documents related to the determination or collection of tax liability. The Commissioner of Taxation and Finance shall determine which documents this directive shall apply to and shall further define the requirements for accepted digital signatures.

- Section 8-400 of the Election Law is temporarily suspended and hereby modified to provide that due to the prevalence and community spread of COVID-19, an absentee ballot can be granted based on temporary illness and shall include the potential for contraction of the COVID-19 virus for any election held on or before June 23, 2020.

- Solely for any election held on or before June 23, 2020, Section 8-400 of the Election Law is hereby modified to allow for electronic application, with no requirement for in-person signature or appearance to be able to access an absentee ballot.

G I V E N  under my hand and the Privy Seal of

the State in the City of Albany this

ninth day of April in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.16

E X E C U T I V E  O R D E R

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 12, 2020 the following:

- Sections 8602 and 8603 of the Education Law, and section 58-1.5 of Title 10 of the NYCRR, to the extent necessary to permit individuals to perform testing for the detection of SARS-CoV-2, or its antibodies, in specimens collected from individuals suspected of suffering from a COVID-19 infection; individuals performing testing must meet the federal requirements for testing personnel appropriate to the assay or device authorized by the FDA or the New York State Department of Health;

- Section 711 of the Real Property and Proceedings Law, Section 232-a of the Real Property Law, and subdivisions 8 and 9 of section 4 of the Multiple Dwelling Law, and any other law or regulation are suspended and modified to the extent that such laws would otherwise create a landlord tenant relationship between any individual assisting with the response to COVID-19 or any individual that has been displaced due to COVID-19, and any individual or entity, including but not limited to any hotel owner, hospital, not-for-profit housing provider, hospital, or any other temporary housing provider who provides temporary housing for a period of thirty days or more solely for purposes of assisting in the response to COVD-19;

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 12, 2020:

- The New York City Department of Law shall issue no-action or no-filing letters received during the duration of this executive order within 45 days from submission of such no-action or no-filing application made to the department of law for essential projects involving affordable housing and homeless shelters. For each application granted by the department of law which permits the applicant to solicit public interest or public funds preliminary to the filing of an offering statement or for the issuance of a "no-filing required" letter. The New York City Department of Finance shall process and record condominium declarations for essential projects involving hospitals or health care facilities, affordable housing, and homeless shelters within 30 days of receipt of such filing.

**EXHIBIT A:    Page 44 of 85**

- Any political party, political party authority or political party official, which, by virtue of any law has a caucus scheduled or otherwise required to take place in April or May of 2020, shall be postponed until June 1, 2020, without prejudice, however such caucus may continue if the caucus is able to be held remotely, through use of telephone conference, video conference, and/or other similar service, and provided that notice for any party caucus to be held remotely shall be deemed satisfied if such notice includes specific information on remote participation and has been filed with the clerk and board of elections at least five days preceding the day of the caucus and published either by newspaper publication thereof once within the village, or on the party 's website, or through electronic mail to any previous caucus participant for which the party has an electronic mail address.

- For all essential businesses or entities, any employees who are present in the workplace shall be provided and shall wear face coverings when in direct contact with customers or members of the public. Businesses must provide, at their expense, such face coverings for their employees. This provision may be enforced by local governments or local law enforcement as if it were an order pursuant to section 12 or 12-b of the Public Health Law. This requirement shall be effective Wednesday, April 15 at 8 p.m.



G I V E N  under my hand and the Privy Seal of the

State in the City of Albany this

twelfth day of April in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.17

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 15, 2020:

- The directive contained in Executive Order 202.16 related to issuance of no-action or no-filing letters is modified to require such letters be issued by the Attorney General.

- Effective at 8 p.m. on Friday, April 17, 2020 any individual who is over age two and able to medically tolerate a face-covering shall be required to cover their nose and mouth with a mask or cloth face-covering when in a public place and unable to maintain, or when not maintaining, social distance.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

fifteenth day of April in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.19

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 17, 2020 the following:

- Subdivision one of Section 860-b of the Labor Law, to the extent necessary to allow a business that receives federal Paycheck Protection Program funding and subsequently rehires employees, to provide the notice required under this section as soon as practicable but not necessarily within ninety days, provided that a business that receives federal Paycheck Protection Program funding provided the notice required under this section when it initially laid off employees.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 17, 2020:

- The Department of Health shall hereby establish a single, statewide coordinated testing prioritization process that shall require all laboratories in the state, both public and private, that conduct COVID-19 diagnostic testing, to complete such COVID-19 diagnostic testing only in accordance with such process. Any such laboratories shall prioritize testing of entities or individuals as directed by this coordinated statewide process. Any such laboratories may not, without an exemption from the Department of Health, enter into an agreement that would reserve testing capabilities for any private or public entity and therefore impede the Departments' ability to prioritize and coordinate COVID-19 testing in New York State. Any violation of this directive may result in a civil penalty not to exceed $10,000 or three times the value of such testing provided in violation of this section, and provided further that the Commissioner is hereby empowered and may revoke any operating certificate or license of such laboratory.

- The directive contained in Executive Order 202.18 requiring any skilled nursing facility, nursing home, or adult care facility licensed and regulated by the Commissioner of Health to notify a family member or next of kin if any resident tests positive for COVID-19, or suffers a COVID-19 related death, within 24 hours is hereby modified solely to provide a penalty for non-compliance of $2,000 per violation per day, as if it were a violation of section 12 of the public health law, and any subsequent violation shall be punishable as if it is a violation of section 12-b of the public health law.

- No local government or local department of health shall take any actions that could affect public health without consulting with the state department of health. No local government official shall take any action that could impede or conflict with any other local government actions, or state actions, with respect to managing the COVID-19 public health emergency.



G I V E N  under my hand and the Privy Seal of the

State in the City of Albany this

seventeenth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.20

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 18, 2020 the following:

- Section 13 of the Domestic Relations Law, to the extent necessary to permit those persons to whom marriage licenses were issued but shall expire within the period of time that New York State residents are to maintain distance between each other, to waive the 60 days required to obtain a marriage license during the period of time that there exists a declared emergency in New York State; and

- Section 15 of the Domestic Relations Law, to the extent necessary to permit those persons who were unable to marry within the time frame issued on the marriage license, waive the fees necessary to obtain a second marriage license, if necessary, mirroring the original marriage license that was obtained during the period of time a declared emergency existed in New York State.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 18, 2020:

- Any issuance of a marriage license application, marriage license, or witnessing or solemnizing of the marriage ceremony, that is required under New York State law is authorized to be performed utilizing audio-video technology provided that the following conditions are met: The couple seeking the marriage services, must present valid photo ID to verify identity whenever required by law the during the video conference, not merely transmit it prior to or after; the video conference must allow for direct interaction between the couple and the town or city clerk, the witness or the person to solemnize the marriage (e.g. no pre-recorded videos of the person signing or engaged in the marriage ceremony); the couple must affirmatively represent that he or she is physically situated in the jurisdiction where the marriage is legally allowed to occur, within the State of New York; the couple must transmit by fax or electronic means a legible copy of the signed document directly to the town or city clerk, the witnesses, the person to solemnize the marriage on the same date it was signed; the town or city clerk, witness or person who solemnizes the marriage may sign the transmitted copy of the document and transmit the same back to the person responsible for the document by law; to the extent practicable, all parties will use their best efforts to ensure the document is transmitted in the most confidential manner and information will not be released to any third party not associated with the marriage license and marriage ceremony; and the electronic signed copy of the marriage license application or marriage license will become the official document for purposes of Domestic Relations Law. Local town and city clerks may provide guidance related to how marriage licensure applications and issuance will be implemented in their jurisdictions.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

eighteenth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.21

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 19, 2020:

- The directive regarding solemnization of a marriage ceremony contained in Executive Order 202.20 shall be modified to expressly include any officiant, public or private, as able to perform or solemnize such marriage ceremony utilizing audio-video technology, as delineated in such directive.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

nineteenth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.22

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 20, 2020 the following:

- Article 5 of the Real Property Tax Law, and analogous provisions of any other general or special laws that require a tentative assessment roll to be filed on or before June 1, 2020, to allow the tentative and final assessment rolls to be filed, at local option, up to 30 days later than otherwise allowable, to allow an assessing unit to set a date for hearing assessment complaints that is at least 21 days after the filing of the tentative roll, to allow notice of the filing of the tentative roll to be published solely online so long as the date for hearing complaints is prominently displayed, to suspend in-person inspection of the tentative roll, and to allow local Boards of Assessment Review to hear complaints remotely by conference call or similar service, provided that complainants can present their complaints through such service and the public has the ability to view or listen to such proceeding;

- Section 1212 of the Real Property Tax Law, to the extent necessary to allow the commissioner of taxation and finance to certify final state equalization rate, class ratios, and class equalization rates, if required, no later than ten days prior to the last date set by law for levy of taxes of any municipal corporation to which such equalization rate, class ratios, and class equalization rates are applicable;

- Section 1512(1) of the Real Property Tax Law and Sections 283.291 and 283.221 of the Laws of Westchester County, are suspended to allow the County Executive to negotiate with any town supervisor or mayor of any city, to accept a lesser percentage of taxes, special ad valorem levies or special assessments which are otherwise due on May 25, provided that in no event shall any town or city be required to pay more than sixty percent. The County Executive is empowered to determine whether or not penalties for late payment or interest are able to be waived dependent on whether or not such town or city applies the County Executive's criteria for determining hardship due to COVID-19;

- Section 283.221 of the Laws of Westchester County is further suspended to the extent necessary to require the supervisor of a town, to waive payment of penalties for late payment of county and county district taxes under section 283.221 up to July 15, 2020, and waive payment of penalties for late payment of town and town district taxes and assessments in the same manner, provided such town applies the County Executive's criteria for the determination of hardship due to COVID-19;

- Section 1512(1) of the Real Property Tax Law and any penalty provision of the tax code of a city within Westchester County is further suspended to the extent necessary to allow the mayor of that City to waive the payment of penalties for late payment of county and county district taxes and to further waive payment of penalties for late payment of city and city district taxes and assessments in the same manner, provided such city applies the County Executive's criteria for the determination of hardship due to COVID-19;

- Section 5-18.0(2) of the Nassau County Administrative Code, to the extent necessary to allow the Nassau County Executive to extend until June 1, 2020, the deadline to pay without interest or penalty the final one-half of school taxes upon real estate in such county.



G I V E N  under my hand and the Privy Seal of the State in the City of Albany this twentieth day of April in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.23

## E X E C U T I V E  O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 24, 2020 the following:

- Section 8-400 and any provision of Article 9 of the Election Law in order to provide that every voter that is in active and inactive status and is eligible to vote in a primary or special election to be held on June 23, 2020 shall be sent an absentee ballot application form with a postage paid return option for such application. This shall be in addition to any other means of requesting an absentee ballot available, and any voter shall continue to be able to request such a ballot via phone or internet or electronically. Any ballot which was requested or received for any previously re-scheduled election, or for the primary election to be held on June 23, 2020 shall continue to be valid and shall be counted by the Board of Elections if it shall be returned to them.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 24, 2020:

- The Commissioner of Health is authorized to suspend or revoke the operating certificate of any skilled nursing facility or adult care facility if it is determined that such facility has not adhered to any regulations or directives issued by the Commissioner of Health, and if determined to not be in compliance notwithstanding any law to the contrary the Commissioner may appoint a receiver to continue the operations on 24 hours' notice to the current operator, in order to preserve the life, health and safety of the people of the State of New York.

- The state assembly and state senate special elections, which are otherwise scheduled to be held on June 23, 2020 are hereby cancelled and such offices shall be filled at the general election. The special election to be held for the office of Queens Borough President is hereby cancelled, and such office shall be filled at the general election.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-fourth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.24

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 25, 2020 the following:

- Section 6801 of the Education Law, to the extent necessary to authorize licensed pharmacists to order COVID-19 tests, approved by the Food and Drug Administration (FDA), to detect SARS-CoV-2 or its antibodies, and to administer COVID-19 tests subject to certificate of waiver requirements pursuant to the federal clinical laboratory improvement act of nineteen hundred eighty-eight, in patients suspected of a COVID-19 infection, or suspected of having recovered from COVID-19 infection, subject to completion of appropriate training developed by the Department of Health;
- Subdivision (6) of section 571 of the Public Health Law, to the extent necessary to permit licensed pharmacists to be designated as a qualified healthcare professional for the purpose of directing a limited service laboratory, pursuant to subdivision 579(3) of the Public Health Law, to test patients suspected of a COVID-19 infection or its antibodies provided that such test is FDA-approved and waived for use in a limited service laboratory; and

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 25, 2020:

- The special election to be held for the office of City Council in the 37th district is hereby cancelled, and such office shall be filled at the general election.



G I V E N   under my hand and the Privy Seal of the State in

the City of Albany this twenty fifth day of

April in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.25

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 29, 2020 the following:

- Subdivisions (a) and (e) of section 401.3 and section 710.1 of Title 10 of the NYCRR, and Part 709 and 710 of Title of the NYCRR, and any other applicable regulation, to the extent necessary to allow for the approval and certification by the Commissioner of Health of temporary dedicated birthing sites operated by currently-licensed birthing hospitals and currently-licensed birthing centers;

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 29, 2020:

- The directive related to support persons for birthing patients contained in Executive Order 202.13 and 202.12 is hereby modified to require any article twenty-eight facility, shall, as a condition of licensure, allow any patient giving birth to have present with them: a support person, who does not have symptoms of COVID-19, for the labor, delivery and also the remaining duration of the patient's stay; and/or a doula, who does not have symptoms of COVID-19 for the labor, delivery, and the remaining duration of the patient's stay. The presence of a support person and/or doula will be subject to exceptions for medical necessity determined by the Commissioner.

- The directive contained in Executive Order 202.10 authorizing the Commissioner of Health to direct all general hospitals, ambulatory surgery centers, office-based surgery practices and diagnostic and treatment centers to increase the number of beds available to patients, including by canceling all elective surgeries and procedures, is hereby modified only to the extent necessary to authorize general hospitals to perform elective surgeries and procedures so long as the following criteria are met: within a county, the total available hospital inpatient capacity is over thirty percent and the total available hospital ICU capacity is over thirty percent and the total change, from April 17, 2020 to April 27, 2020, in the number of hospitalized patients who are positive for COVID-19 is fewer than ten; for each hospital within county that has met the eligibility criteria, the available hospital inpatient capacity is over thirty percent and the available hospital ICU capacity is over thirty percent and the change, from April 17, 2020 to April 27, 2020, in the number of hospitalized patients who are positive for COVID-19 is fewer than ten. The Commissioner of Health is

authorized to issue guidance with respect to the implementation of these criteria. General hospitals that are authorized to perform elective surgeries and procedures must report, at a minimum, the number and types of surgeries and procedures performed to the Department of Health, in a manner prescribed by the Commissioner. General hospitals that do not meet the criteria to perform elective surgeries and procedures contained in this directive may seek a waiver from the prohibition, by submitting a plan that includes, at a minimum, their facility capacity, physical configuration, infectious disease protocols, and staffing capacity, including any applicable employment hardship information that includes any reductions in workforce, including furloughs, that have occurred due to the inability of such facility to perform elective surgeries or procedures, or any reductions in workforce, including furloughs, that may imminently occur due to the inability of such facility to perform elective surgeries or procedures, to the Department of Health, in a manner prescribed by the Commissioner. General hospitals shall not perform any elective surgery or procedure for patients until each such patient has tested negative for COVID-19 through an approved diagnostic test, and the hospital and patient have complied with the pre-operative and pre-procedure guidelines in a manner prescribed by the Commissioner.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-ninth day of April in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.26

E X E C U T I V E  O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through May 31, 2020 the following:

- Sections 103 and 104-b of the General Municipal Law, to the extent necessary to allow a board of elections to procure and provide absentee ballot applications, absentee ballots, envelopes, or any other means of transmitting an absentee ballot application or absentee ballot, including postage, to voters without the usual advertising for bids and offers and compliance with existing procurement policies and procedures;
- Sections 1804, 1906, 2002, 2022, 2601-a of the Education Law, to the extent necessary, to provide that the annual district meeting and election of every common, union free, central and central high school district and the annual meeting of every city school district in a city having a population of less than one hundred twenty-five thousand inhabitants was scheduled to be held on the third Tuesday of May, two thousand twenty is hereby adjourned and rescheduled until June 9, 2020, which shall be deemed the statewide uniform voting day;
- Sections 2003, 2004, 2022 2601-a of the Education Law, to the extent necessary to provide that trustees or boards of education of each such school district shall provide notice of such adjourned meeting to the qualified voters in the manner prescribed for notice of the annual meeting except that the number of required publications shall be two and the first publication must be no later than 28 days before the election, and such notice shall provide for an adjourned budget hearing. Such adjourned meeting shall take place remotely, and qualified voters shall vote in such adjourned election only by absentee ballot, to be provided to all qualified voters by each school district. Each district shall send out postcard notice which details the date of the election, date of budget hearing, definition of qualified voter, and an absentee ballot, The adjourned district meeting or district meeting and election shall be deemed the annual meeting or annual meeting and election of the district for all purposes;
- Sections 1608 and 1716 of the Education Law to the extent necessary to allow report cards to be submitted to the State Education Department no later than 18 days prior to the date of the adjourned meeting, and the department shall make its compilation available electronically at the latest on June 2, 2020, seven days prior to the adjourned meeting date;
- Sections 2018-a and 2018-b of the Education Law are temporarily suspended and hereby modified to provide that due to the prevalence and community spread of COVID-19, that the potential for contraction of the COVID-19 virus shall be deemed temporary illness;

**EXHIBIT A:   Page 59 of 85**

- Sections 2018-a and 2018-b of the Education Law are hereby modified, only for the purpose of any election held on or before June 30, 2020, to require every eligible voter be sent an absentee ballot with a postage paid return envelope;
- Sections 2018, 2032, and 2608 of the Education Law to the extent necessary to allow candidates be listed on ballots alphabetically, and that ballots for small city school districts shall be set 30 days before the election;
- Sections 2018 and 2608 of the Education Law to the extent necessary to eliminate any minimum threshold of signatures required, provided, however, an individual must meet any other requirements necessary to be placed on the ballot, including any applicable residency and age requirements;
- Section 260 of the Education Law to the extent necessary to authorize public libraries established and supported by a school district to re-notice an election noticed pursuant to this section. Such election and/or budget vote shall be conducted via absentee ballot in conjunction with the school district's rescheduled absentee ballot process or independently using the guidelines created for the school district's absentee ballot process. Such a vote may be managed by the school district or the library, at the library's request. Furthermore, the same provisions that are made for a school board trustee's petition shall apply to a library board trustee's petition;
- Section 259 (1) of the Education Law to the extent necessary to give applicable school ballot funding propositions for public or association libraries to take place on the absentee ballot used to administer the school district's budget vote;
- Sections 259 and 260 of the Education Law are hereby modified for any library election held on or before July 1, 2020, to eliminate any requirement for an application to access an absentee ballot, and each such eligible voter shall be mailed an absentee ballot with a postage paid return envelope;
- Article 6 and 15 of the Election Law in relation to conducting any village election to be held September 15, 2020 pursuant to this Executive Order, are temporarily suspended and otherwise modified as follows:
  - o Any village election previously scheduled to be held in March, April, May, or June will be held on September 15, 2020.
  - o For any village election scheduled to be held on September 15, 2020 as directed by this Executive Order, all party nominations shall be made by party caucus, which may be conducted remotely as set forth by the chair of such party, and which shall be held not later than August 20, 2020, and provided that a certificate of nomination from such caucus and any certificates of declination or acceptance shall be filed not later than August 22, 2020, and provided that once a certificate of declination is submitted, no substitutions shall be permitted.
  - o All independent nominations for a village election previously scheduled prior to September 2020, now to be held on September 15, 2020, shall be postponed until such time as NY on Pause is suspended, subject to a process determined by a future Executive Order.
  - o Any village election postponed by Executive Order originally scheduled for a date in March, April, May or June of 2020 for which the ballot was fully determined at the time of this Executive Order shall proceed with the same ballot as would have been used at such prior election, and if such ballots were already printed, such ballots may be used at the September 15, 2020 election despite containing thereon the original date of the election.
  - o Any provision of the election law or village law otherwise applicable to the manner of conducting such an election in March, April, May or June, shall apply to the date of the September 15, 2020 election.
  - o Village officials elected at a rescheduled election held on September 15, 2020, shall assume office as soon as the statement of canvass is filed with the village clerk pursuant to section 15-126 of the Election Law or certified by the board of election, and the term of office of such officers shall end as if they had been elected at the time of the originally scheduled election.
  - o Any village election previously postponed by Executive Order for which ballot access was not completed at the time of such suspension shall be conducted solely in accordance with the ballot access provisions applicable to the September 15, 2020, election.
- Section 8-406 that is modified to the extent that any absentee ballot sent to a voter for a primary or special election to be held on June 23, 2020 shall be provided with a postage paid return envelope;
- Section 9-209 of the Election Law in relation to canvassing absentee ballots is modified to permit any absentee ballot submitted by a voter who requested such ballot for the prior date of an election canceled and then rescheduled due to the COVID-19 public health emergency, shall be cast and canvassed unless otherwise invalid, unless such voter shall appear to vote on the date of the rescheduled election or such voter requests and returns a subsequent absentee ballot;
- Section 8-410 of the Election Law in relation to marking absentee ballots is modified to the extent that for any election held before July 1, 2020, upon transmitting or mailing absentee ballots to voters, the board of elections shall provide and maintain, in its office, a voting system that is accessible for voters wishing to mark their ballot privately and independently, and provided that availability of this service shall be posted on the website of each board of elections;

- Section 16-108 of the Election Law is modified to permit any Justice of the Supreme Court appointed to hear election matters on election day may hear and determine such matters telephonically or by video conference and shall not be required to be physically at a board of elections;
- Section 8-407 of the Election Law, in relation to providing absentee ballots to voters residing in certain facilities, is modified to the extent that inspectors of the board shall not attend and/or visit facilities described in section 8-407 of the Election Law, and shall not physically deliver ballots to residents of facilities in person for primaries or elections held on or prior to July 1, 2020, and boards of elections, in the same manner as absentee ballots are delivered to other absentee voters pursuant to Title 4 of Article 8 of the Election Law, shall instead mail or deliver absentee ballots to voters residing in such facilities; and
- Section 5-204 of the Election Law in relation to local in person registration is modified to the extent that meetings for local in person registration at poll sites shall not be held in 2020.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through May 31, 2020:

- Any district or special district, including, but not limited to fire, library, sewer, or water, that conducts an election and/or budget vote shall be rescheduled to September 15, 2020 and collection of signatures for nominating petitions is hereby suspended until further notice, subject to a process determined by a future Executive Order; provided however, a library district may conduct an election on June 9, 2020 pursuant to this Executive Order if such election is managed by a school district.
- Circulation, filing, and collection of any independent nominating petition pursuant to section 6-138 of the Election Law for any office that would otherwise be circulated or filed pursuant to the Election Law or for any special district election, as provided for in Executive Order 202.13, continue to be postponed until further notice and shall be subject to a future Executive Order.
- Any village election that was postponed in March of 2020, or scheduled to be held on June 16, 2020, or any time prior to September 15, 2020, is hereby rescheduled for September 15, 2020.
- Executive Order 202.23 is modified to clarify that any voter that is in active and/or inactive status and is eligible to vote in a primary or special election to be held on June 23, 2020 who requests an absentee ballot via telephone for the June 23 special election or primary election, shall be sent an absentee ballot with a postage paid return envelope; provided however each voter shall not be sent more than one ballot, and shall not be required to complete an application either prior to or simultaneously to receiving the ballot. Further, the board of elections receiving the telephone request shall maintain a record of such telephone request for an absentee ballot, and may complete the absentee ballot application as such record on behalf of the voter requesting the absentee ballot, provided that no ballot shall be deemed invalid for lack of a complete absentee ballot application for any reason.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this first day

of May in the year two thousand

twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.27

<u>E X E C U T I V E   O R D E R</u>

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York;

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue; and

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through June 4, 2020:

- Any suspension or modification of any law heretofore suspended in Executive Order 202, or any amended or modified Executive Order issued thereafter, which allowed for the practice of a profession in the state of New York without a current New York State licensure, or registration, including but not limited to those individuals who are validly licensed in another state or Canada, is hereby extended for a period of thirty days to allow those professionals the ability to continue to provide services necessary for the State's COVID-19 response.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany the fifth

day of May in the year two thousand

twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.28

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, for thirty days until June 6, 2020, except as modified below:

- The suspension or modification of the following statutes and regulations are not continued, and such statutes, codes and regulations are in full force and effect as of May 8, 2020:

  o 10 NYCRR 405.9, except to the limited extent that it would allow a practitioner to practice in a facility where they are not credentialed or have privileges, which shall continue to be suspended; 10 NYCRR 400.9; 10 NYCRR 400.11, 10 NYCRR 405; 10 NYCRR 403.3; 10 NYCRR 403.5; 10 NYCRR 800.3, except to the extent that subparagraphs (d) and (u) could otherwise limit the scope of care by paramedics to prohibit the provision of medical service or extended service to COVID-19 or suspected COVID-19 patients; 10 NYCRR 400.12; 10 NYCRR 415.11; 10 NYCRR 415.15; 10 NYCRR 415.26; 14 NYCRR 620; 14 NYCRR 633.12; 14 NYCRR 636-1; 14 NYCRR 686.3; and 14 NYCRR 517;

  o Mental Hygiene Law Sections 41.34; 29.11; and 29.15;

  o Public Health Law Sections 3002, 3002-a, 3003, and 3004-a to the extent it would have allowed the Commissioner to make determination without approval by a regional or state EMS board;

  o Subdivision (2) of section 6527, Section 6545, and Subdivision (1) of Section 6909 of the Education Law; as well as subdivision 32 of Section 6530 of the Education Law, paragraph (3) of Subdivision (a) of Section 29.2 of Title 8 of the NYCRR, and sections 58-1.11, 405.10, and 415.22 of Title 10 of the NYCRR;

  o All codes related to construction, energy conservation, or other building code, and all state and local laws, ordinances, and regulations which would have otherwise been superseded, upon approval by the Commissioner of OPWDD, as applicable only for temporary changes to physical plant, bed capacities, and services provided; for facilities under the Commissioners jurisdiction.

**IN ADDITION**, I hereby temporarily suspend or modify the following if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, for the period from the date of this Executive Order through June 6, 2020:

- Sections 7-103, 7-107 and 7-108 of the General Obligations Law to the extent necessary to provide that:

  - Landlords and tenants or licensees of residential properties may, upon the consent of the tenant or licensee, enter into a written agreement by which the security deposit and any interest accrued thereof, shall be used to pay rent that is in arrears or will become due. If the amount of the deposit represents less than a full month rent payment, this consent does not constitute a waiver of the remaining rent due and owing for that month. Execution in counterpart by email will constitute sufficient execution for consent;
  - Landlords shall provide such relief to tenants or licensees who so request it that are eligible for unemployment insurance or benefits under state or federal law or are otherwise facing financial hardship due to the COVID-19 pandemic;
  - It shall be at the tenant or licensee's option to enter into such an agreement and landlords shall not harass, threaten or engage in any harmful act to compel such agreement;
  - Any security deposit used as a payment of rent shall be replenished by the tenant or licensee, to be paid at the rate of 1/12 the amount used as rent per month. The payments to replenish the security deposit shall become due and owing no less than 90 days from the date of the usage of the security deposit as rent. The tenant or licensee may, at their sole option, retain insurance that provides relief for the landlord in lieu of the monthly security deposit replenishment, which the landlord, must accept such insurance as replenishment.

- Subdivision 2 of section 238-a of the Real Property Law to provide that no landlord, lessor, sub-lessor or grantor shall demand or be entitled to any payment, fee or charge for late payment of rent occurring during the time period from March 20, 2020, through August 20, 2020; and

- Section 8-400 of the Election Law is modified to the extent necessary to require that to the any absentee application mailed by a board of elections due to a temporary illness based on the COVID-19 public health emergency may be drafted and printed in such a way to limit the selection of elections to which the absentee ballot application is only applicable to any primary or special election occurring on June 23, 2020, provided further that for all absentee ballot applications already mailed or completed that purported to select a ballot for the general election or to request a permanent absentee ballot shall in all cases only be valid to provide an absentee ballot for any primary or special election occurring on June 23, 2020. All Boards of Elections must provide instructions to voters and post prominently on the website, instructions for completing the application in conformity with this directive.

- The suspension of the provisions of any time limitations contained in the Criminal Procedure Law contained in Executive Order 202.8 is modified as follows:

  - Section 182.30 of the Criminal Procedure Law, to the extent that it would prohibit the use of electronic appearances for certain pleas;
  - Section 180.60 of the Criminal Procedure Law to provide that (i) all parties' appearances at the hearing, including that of the defendant, may be by means of an electronic appearance; (ii) the Court may, for good cause shown, withhold the identity, obscure or withhold the image of, and/or disguise the voice of any witness testifying at the hearing pursuant to a motion under Section 245.70 of the Criminal Procedure law—provided that the Court is afforded a means to judge the demeanor of a witness;
  - Section 180.80 of the Criminal Procedure Law, to the extent that a court must satisfy itself that good cause has been shown within one hundred and forty-four hours from May 8, 2020 that a defendant should continue to be held on a felony complaint due to the inability to empanel a grand jury due to COVID-19, which may constitute such good cause pursuant to subdivision three of such section; and
  - Section 190.80 of the Criminal Procedure Law, to the extent that to the extent that a court must satisfy itself that good cause has been shown that a defendant should continue to be held on a felony complaint beyond forty-five days due to the inability to empanel a grand jury due to COVID-19, which may constitute such good cause pursuant to subdivision b of such section provided that such defendant has been provided a preliminary hearing as provided in section 180.80.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of Executive Order through June 6, 2020:

- There shall be no initiation of a proceeding or enforcement of either an eviction of any residential or commercial tenant, for nonpayment of rent or a foreclosure of any residential or commercial mortgage, for nonpayment of such mortgage, owned or rented by someone that is eligible for unemployment insurance or benefits under state or federal law or otherwise facing financial hardship due to the COVID-19 pandemic for a period of sixty days beginning on June 20, 2020.

- Executive Order 202.18, which extended the directive contained in Executive Orders 202.14 and 202.4 as amended by Executive Order 202.11 related to the closure of schools statewide, is hereby continued to provide that all schools shall remain closed through the remainder of the school year. School districts must continue plans for alternative instructional options, distribution and availability of meals, and child care, with an emphasis on serving children of essential workers.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

seventh of May in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.29

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202.15, 202.16, 202.17, 202.18, 202.19, 202.20, and 202.21, for thirty days until June 7, 2020; and

**IN ADDITION,** I hereby temporarily modify, beginning on the date of this Executive Order, the following:

- Section 214-g of the Civil Practice Law and Rules, to the extent it allows an action to be commenced not later than one year and six months after the effective date of such section, is hereby modified to allow an action commenced pursuant to such section to be commenced not later than one year and eleven months after the effective date of such section.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this eighth

day of May in the year two thousand

twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.30

## E X E C U T I V E   O R D E R

### Continuing Temporary Suspension and Modification of Laws
### Relating to the Disaster Emergency

**WHEREAS,** on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS,** both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to be continue;

**NOW, THEREFORE,** I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through June 9, 2020 the following:

- Clause (b) of subparagraph (v) of paragraph (1) of subdivision (c) of section 415.26 , paragraph (8) of subdivision (a) of section 487.9  and paragraph (5) of subdivision (a) of section 488.9  of Title 18 of the NYCRR; and subdivision (7) of section 4656  of the Public Health Law  are modified to the extent necessary to require that the operator and administrator of all nursing homes and all adult care facilities, including all adult homes, enriched housing programs and assisted living residences  to test or make arrangements for the testing of all personnel, including all employees, contract staff, medical staff, operators and administrators, for COVID-19, twice per week, pursuant to a plan developed by the facility administrator and filed with the Department of Health no later than 5:00 p.m. on Wednesday, May 13, 2020. Any positive test result shall be reported to the Department of Health by 5:00 p.m. of the day  following receipt of such test result, in a manner determined by the Commissioner of Health. Nothing herein shall prohibit staff of the Department of Health, or the local health department in the jurisdiction of the nursing home or adult care facility, from having unrestricted access to the facility where such access is determined necessary in the discretion of the Commissioner of Health for purposes of testing all personnel for COVID-19, and provided further that in such circumstances the operator and administrator shall cooperate fully with Department of Health and local health department staff to facilitate such testing.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through June 9, 2020:

**EXHIBIT A:   Page 67 of 85**

- No later than May 15, 2020, both the operator and the administrator of all nursing homes and adult care facilities must provide to the Department of Health a certification of compliance with this Executive Order and directives of the Commissioner of Health, and all other applicable Executive Orders and directives of the Commissioner of Health.

  o The Commissioner of Health is authorized to suspend or revoke the operating certificate of any nursing home or adult care facility if it is determined that such facility has not complied with this Executive Order, or any regulations or directives issued by the Commissioner of Health, and if determined to not be in compliance, notwithstanding any law to the contrary the Commissioner may appoint a receiver to continue the operations on 24 hours' notice to the current operator, in order to preserve the life, health and safety of the people of the State of New York. Any false statement in the attestation shall be punishable under the provisions of Penal Code 210.45.

  o Any nursing home or adult care facility which does not comply with this Executive Order shall be subject to a penalty for non-compliance of $2,000 per violation per day, as if it were a violation of section 12 of the public health law, and any subsequent violation shall be punishable as if it is a violation of section 12-b of the public health law, with a penalty of $10,000 per violation per day.

  o Any personnel of a nursing home or adult care facility who refuse to be tested for COVID-19 pursuant to a plan submitted to the Department of Health shall be considered to have outdated or incomplete health assessments and shall therefore be prohibited from providing services to such nursing home or adult care facility until such testing is performed.

- Any article 28 general hospital shall not discharge a patient to a nursing home, unless the nursing home operator or administrator has first certified that it is able to properly care for such patient. Provided further, that any article 28 general hospital shall not discharge a patient to a nursing home, without first performing a diagnostic test for COVID-19 and obtaining a negative result.

G I V E N   under my hand and the Privy Seal of the State in the City of Albany this tenth day of May in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.31

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through June 13, 2020 the following:

- Subdivisions (1), (2), and (3) of Section 594 of the Labor Law are suspended to the extent necessary to prevent forfeiture of effective benefit days to provide claimants with temporary relief from serving forfeit day penalties during the COVID-19 disaster emergency; and

- Section 240.35 of the penal law, to the extent it is inconsistent with any directive requiring an individual wear a face covering in public or otherwise.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through the date so designated below:

- Executive Order 202.28, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, and 202.14 which each closed or otherwise restricted public or private businesses or places of public accommodation, and which required postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events), which together constitute New York On PAUSE, is hereby continued until 11:59 p.m. on May 28, 2020, unless later amended or extended by a future Executive Order;
  - Provided, however, that effective at 12:01 a.m. on May 15, 2020 that the reductions and restrictions on the in-person workforce at non-essential businesses or other entities shall no longer apply to Phase One industries
    - Construction, Agriculture, Forestry, Fishing and Hunting, Retail - (Limited to curbside or in-store pickup or drop off); Manufacturing and Wholesale Trade;
  - Such businesses or entities must be operated subject to the guidance promulgated by the Department of Health;
  - Only those businesses or entities in a region that meets the prescribed public health and safety metrics, as determined by the Department of Health, will be eligible for reopening;

- o As of May 14, 2020 the regions are: Finger Lakes, Central New York, Mohawk Valley, Southern Tier and the North Country regions comprising the counties of: Genesee, Livingston, Monroe, Ontario, Orleans, Seneca, Wayne, Wyoming, Yates Cayuga, Cortland, Madison, Onondaga, Oswego, Fulton, Herkimer, Montgomery, Oneida, Otsego, Schoharie, Broome, Chemung, Chenango, Delaware, Schuyler, Steuben, Tioga, Tompkins Clinton, Essex, Franklin, Hamilton, Jefferson, Lewis, and St. Lawrence. Any additional regions which meet the criteria after such date will be deemed to be incorporated into this Executive Order without further revision and will be permitted to re-open phase one industries, subject to the same terms and conditions.
- o All enforcement mechanisms by state or local governments shall continue to be in full force an effect until June 13, 2020 unless later extended or amended by a future Executive Order.

- The directive contained in Executive Order 202.15 authorizing the Department of Taxation and Finance to accept digital signatures in lieu of handwritten signatures on documents related to the determination or collection of tax liability, is hereby modified to authorize such acceptance for the duration of the disaster emergency.

- The directive contained in Executive Order 202.3 which closed movie theaters until further notice and was later extended by Executive Order 202.14 and EO 202.28, is hereby modified to provide that a drive-in movie theater, shall not be required to close, but shall be treated as any other business per Executive Order 202.6, which designated certain businesses as essential or non-essential and subjected such businesses to in-person presence restrictions in the workplace.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

fourteenth day of May in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.32

E X E C U T I V E  O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202.23 and each successor Executive Order up to and including Executive Order 202.27, for thirty days until June 20, 2020.

**IN ADDITION**, I hereby temporarily suspend or modify the following for the period from the date of this Executive Order through June 20, 2020, the following:

- Subdivision (1) of section 576-b of the Public Health Law and section 58-1.7 and 58-1.8 of Title 10 of the NYCRR, to the extent necessary to, in furtherance of Executive Order 202.30 and any extensions thereof, allow clinical laboratories to accept and examine specimens for COVID-19 testing, from personnel of nursing homes and adult care facilities, as such personnel are defined in Executive Order 202.30, without a prescription or order from an authorized ordering source, and to report the results of such tests to the appropriate operators and administrators of the nursing home or adult care facility for which the person for whom the test was performed provides services; provided that, to ensure appropriate follow-up with patients who test positive for COVID-19, the facility administrator shall contact the local health department to ensure all facility personnel who test positive are provided appropriate clinical guidance as well as appropriate isolation orders; and

- Section 6530 of the Education Law, to the extent necessary to allow physicians to order COVID-19 tests, authorized by the U.S. Food and Drug Administration (FDA) for self-collection, without otherwise having an initial physician-patient relationship with the patient.

**IN ADDITION**, by virtue of the authority vested in me by Section 925-a of the Real Property Tax Law to extend during a State disaster emergency the period for paying property taxes without interest or penalties upon request of the chief executive officer of an affected county, city, town, village or school district, I do hereby extend by twenty-one days the period for paying, without interest or penalty, property taxes that are due in the following localities that have requested such an extension: Village of Antwerp, Jefferson County; Village of Asharoken, Suffolk County; Village of Bainbridge, Chenango County; Village of Bayville, Nassau County; Village of Bronxville, Westchester County; Village of Canastota, Madison County; Village of Cedarhurst, Nassau County; Village of Chester, Orange County; Village of Chittenango, Madison County; City of Corning, Steuben County; Village of Coxsackie, Greene County; Village of Croton-on-Hudson, Westchester County; Village of Delhi, Delaware County; Village of Deposit, Broom-Delaware County; Village of Dexter, Jefferson County; Village of Dryden, Tompkins County; Town/Village of East Rochester, Monroe County; Village of East Rockaway, Nassau County; Village of Flower Hill, Nassau County; Grand-View-on-Hudson, Rockland County; Village of Granville, Washington

**EXHIBIT A:  Page 71 of 85**

County; Village of Great Neck, Nassau County; Village of Great Neck Estates, Nassau County; Village of Haverstraw, Rockland County; Village of Herkimer, Herkimer County; Village of Holland Patent, Oneida County; Village of Holley, Orleans County; Village of Huntington Bay, Suffolk County; Village of Kings Point, Nassau County; Village of Irvington, Westchester County; Village of Lynbrook, Nassau County; Village of Massapequa Park, Nassau County; Village of Massena, St. Lawrence County; Village of Menands, Albany County; Village of Mexico, Oswego County; Village of Mill Neck, Nassau County; Village of Millport, Chemung County; Village of Naples, Ontario County; Village of Nassau, Rensselaer County; Village of New Hartford, Oneida County; Village of New York Mills, Oneida County; Village of Old Westbury, Nassau County; Village of Orchard Park, Erie County; Village of Oyster Bay Cove, Nassau County; Village of Pawling, Dutchess County; Village of Poland, Herkimer County; Village of Pulaski, Oswego County; Village of Quogue, Suffolk County; Village of Roslyn, Nassau County; Village of Roslyn Harbor, Nassau County; Village of Saranac Lake, Franklin-Essex Counties; Village of Saugerties, Ulster County; Village of Scottsville, Monroe County; Village of Sea Cliff, Nassau County; Village of Sidney, Delaware County; Village of Spencerport, Monroe County; Village of Sodus, Wayne County; Village of South Glens Falls, Saratoga County; Village of Trumansburg, Tompkins County; Village of Tuckahoe, Westchester County; Village of Upper Nyack, Rockland County; Village of Warwick, Orange County; Village of Wesley Hills, Rockland County; Village of West Haverstraw, Rockland County; Village of Westbury, Nassau County; Village of Whitehall, Washington County; Village of Whitesboro, Oneida County; Village of Williston Park, Nassau County; Village of Valley Stream, Nassau County; Village of Floral Park, Nassau County; Village of Schoharie, Schoharie County; and the County of Suffolk..

**IN ADDITION,** by virtue of the authority vested in me by Section 925-a of the Real Property Tax Law, I do hereby retroactively extend by twenty-one days the period for paying without interest or penalty the property taxes that were due by April 1, 2020, in the Village of Head of the Harbor, Suffolk County, and the Village of Russell Gardens, Nassau County.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through June 20, 2020:

- Any licensee or franchisee of a racetrack in the State is hereby permitted to operate such racetrack as of June 1, 2020, provided such racetrack does not permit any visitor or fan into the facility, and allows on site only essential personnel; and provided further that such licensee or franchisee of a racetrack, and all essential personnel adhere to any directive or guidance issued by the Department of Health and/or by the Gaming Commission.

- Executive Order 202.10 (as later extended by Executive Order 202.18 and Executive Order 202.29) which prohibited all non-essential gatherings of any size for any reason, is hereby modified to permit a gathering of ten or fewer individuals for any religious service or ceremony, or for the purposes of any Memorial Day service or commemoration, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to, and provided further, that any drive-in or remote religious service may continue in excess of the ten person limit so long as there is no in-person contact between participants. Vehicle caravans are permitted.

- The authority of the Commissioner of Taxation and Finance to abate late filing and payment penalties pursuant to section 1145 of the Tax Law is hereby expanded to authorize abatement of interest and penalties for a period of up to 100 days for taxpayers who were required to file returns and remit sales and use taxes by March 20, 2020, for the sales tax quarterly period that ended February 29, 2020.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, I hereby suspend or modify the following provisions included in Executive Order 202.22, for the period from the date of this Executive Order through June 20, 2020, unless an earlier date is specified below:

- Article 5 of the Real Property Tax Law, and analogous provisions of any other general or special laws that require a tentative assessment roll to be filed on or before June 1, 2020, to allow the tentative and final assessment rolls to be filed, at local option, up to 30 days later than otherwise allowable, to allow an assessing unit to set a date for hearing assessment complaints that is at least 21 days after the filing of the tentative roll, to allow notice of the filing of the tentative roll to be published solely online so long as the date for hearing complaints is prominently displayed, to suspend in-person inspection of the tentative roll, and to allow local Boards of Assessment Review to hear complaints remotely by conference call or similar service, provided that complainants can present their complaints through such service and the public has the ability to view or listen to such proceeding;

- Section 1212 of the Real Property Tax Law, to the extent necessary to allow the commissioner of taxation and finance to certify final state equalization rate, class ratios, and class equalization rates, if required, no later than ten days prior to the last date set by law for levy of taxes of any municipal corporation to which such equalization rate, class ratios, and class equalization rates are applicable;

- Section 1512(1) of the Real Property Tax Law and Sections 283.291 and 283.221 of the Laws of Westchester County, are suspended to allow the County Executive to negotiate with any town supervisor or mayor of any city, to accept a lesser percentage of taxes, special ad valorem levies or special assessments which are otherwise due on May 25, provided that in no event shall any town or city be required to pay more than sixty percent. The County Executive is empowered to determine whether or not penalties for late payment or interest are able to be waived dependent on whether or not such town or city applies the County Executive's criteria for determining hardship due to COVID-19;

- Section 283.221 of the Laws of Westchester County is further suspended to the extent necessary to require the supervisor of a town, to waive payment of penalties for late payment of county and county district taxes under section 283.221 up to July 15, 2020, and waive payment of penalties for late payment of town and town district taxes and assessments in the same manner, provided such town applies the County Executive's criteria for the determination of hardship due to COVID-19;

- Section 1512(1) of the Real Property Tax Law and any penalty provision of the tax code of a city within Westchester County is further suspended to the extent necessary to allow the mayor of that City to waive the payment of penalties for late payment of county and county district taxes and to further waive payment of penalties for late payment of city and city district taxes and assessments in the same manner, provided such city applies the County Executive's criteria for the determination of hardship due to COVID-19;

- Section 5-18.0(2) of the Nassau County Administrative Code, to the extent necessary to allow the Nassau County Executive to extend until June 1, 2020, the deadline to pay without interest or penalty the final one-half of school taxes upon real estate in such county.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-first day of May in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.33

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through June 21, 2020:

- Executive Order 202.10, as later extended by Executive Order 202.18, Executive Order 202.29 and as extended and amended by Executive Order 202.32, which prohibited all non-essential gatherings of any size for any reason, except for any religious service or ceremony, or for the purposes of any Memorial Day service or commemoration, which allowed ten or fewer individuals to gather, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to is hereby modified to permit any non-essential gathering of ten or fewer individuals, for any lawful purpose or reason, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-second day of May in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.34

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through June 27, 2020:

- Business operators and building owners, and those authorized on their behalf shall have the discretion to ensure compliance with the directive in Executive Order 202.17 (requiring any individual over age two, and able to medically tolerate a face-covering, be required to cover their nose and mouth with a mask or cloth face-covering when in a public place), including the discretion to deny admittance to individuals who fail to comply with the directive in Executive Order 202.17 or to require or compel their removal if they fail to adhere to such directive, and such owner or operator shall not be subject to a claim of violation of the covenant of quiet enjoyment, or frustration of purpose, solely due to their enforcement of such directive. Nothing in this directive shall prohibit or limit the right of State and local enforcement authorities from imposing fines or other penalties for any violation of the directive in Executive Order 202.17. This directive shall be applied in a manner consistent with the American with Disabilities Act or any provision of either New York State or New York City Human Rights Law, or any other provision of law.

- Executive Order 202.31, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, 202.14, 202.28 which each closed or otherwise restricted public or private businesses or places of public accommodation, and Executive Order 202.32 as modified by Executive Order 202.33 which required postponement, cancellation, or restriction on size of all non-essential gatherings of more than ten individuals, and which together constitute New York On PAUSE, is hereby continued until and unless later amended or extended by a future Executive Order, provided, however:
  - o As soon as a region meets the prescribed public health and safety metrics, as determined by the Department of Health, they will be eligible for Phase One reopening.
  - o Businesses or entities open pursuant to Department of Health guidance must be operated subject to the guidance promulgated by the Department of Health.
  - o As of May 28, 2020 the regions meeting the prescribed public health and safety metrics required for Phase One reopening are: Finger Lakes, Central New York, Mohawk Valley, Southern Tier, North Country, Western New York, Capital Region, Mid-Hudson, and Long Island. Such regions include the counties of Genesee, Livingston, Monroe, Ontario, Orleans, Seneca, Wayne, Wyoming, Yates, Cayuga, Cortland, Madison, Onondaga, Oswego, Fulton,

Herkimer, Montgomery, Oneida, Otsego, Schoharie, Broome, Chemung, Chenango, Delaware, Schuyler, Steuben, Tioga, Tompkins, Clinton, Essex, Franklin, Hamilton, Jefferson, Lewis, St. Lawrence, Allegany, Cattaraugus, Chautauqua, Erie, Niagara, Albany, Columbia, Greene, Saratoga, Schenectady, Rensselaer, Warren, Washington, Dutchess, Orange, Putnam, Rockland, Sullivan, Ulster, Westchester, Nassau, and Suffolk. Any additional regions which meet the criteria after such date will be deemed to be incorporated into this Executive Order without further revision and will be permitted to re-open Phase One industries, subject to the same terms and conditions.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-eighth day of May in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.35

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws**
**Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through June 28, 2020:

- Executive Order 202.34, which extended the provisions of Executive Orders 202.3, 202.4, 202.5, 202.6, 202.7, 202.8, 202.10, 202.11, 202.13, 202.14, 202.28, and 202.31 which each closed or otherwise restricted public or private businesses or places of public accommodation, and Executive Order 202.32 as modified by Executive Order 202.33 which required postponement, cancellation, or restriction on size of all non-essential gatherings of more than ten individuals, and which together constitute New York On PAUSE, is hereby continued until and unless later amended or extended by a future Executive Order, provided, however:

  - That effective at 1:00 p.m. on May 29, 2020 that the reductions and restrictions on the in-person workforce at non-essential businesses or other entities shall no longer apply to Phase Two industries:

    - Professional Services, Administrative Support, Information Technology,
    - Real estate services, Building and Property Management, Leasing, Rental, and Sales Services,
    - Retail In-store Shopping, Rental, Repair, and Cleaning,
    - Barbershops and Hair Salon (limited services), and
    - Motor Vehicle Leasing, Rental, and Sales.

  - Businesses or entities in industries open in Phase Two must be operated subject to the guidance promulgated by the Department of Health.

o As of May 29, 2020 the regions meeting the prescribed public health and safety metrics required for Phase Two reopening are: Finger Lakes, Central New York, Mohawk Valley, Southern Tier, and the North Country. Any additional regions which meet the criteria after such date will be deemed to be incorporated into this Executive Order without further revision and will be permitted to re-open Phase two industries, subject to the same terms and conditions.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

twenty-ninth day of May in the year

two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.36

E X E C U T I V E   O R D E R

Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, by virtue of the authority vested in me by Section 925-a of the Real Property Tax Law to extend during a State disaster emergency the period for paying property taxes without interest or penalties upon request of the chief executive officer of an affected county, city, town, village or school district, I do hereby extend by twenty-one days the period for paying, without interest or penalty, property taxes that are due in the following localities that have requested such an extension: Village of Angola, Erie County; Village of Babylon, Suffolk County; Village of Bellport, Suffolk County; Village of Brockport, Monroe County; Village of Brookville, Nassau County; Village of Buchanan, Westchester County; Village of Clayton, Jefferson County; Village of Depew, Erie County; Village of East Hills, Nassau County; Village of Endicott, Broome County; Village of Farmingdale, Nassau County; Village of Fayetteville, Onondaga County; Village of Greenport, Suffolk County; Village of Groton, Tompkins County; Village of Hempstead, Nassau County; Village of Homer, Cortland County; Village of Hudson Falls, Washington County; Village of Island Park, Nassau County; Village of Kensington, Nassau County; Village of Laurel Hollow, Nassau County; Village of Monroe, Orange County; Village of Munsey Park, Nassau County; Village of Nyack, Rockland County; Village of Ocean Beach, Suffolk County; Village of Otisville, Orange County; Village of Patchogue; Suffolk County; City of Peekskill, Westchester County; Village of Red Hook, Dutchess County; Village of Rhinebeck, Dutchess County; City of Saratoga Springs, Saratoga County; Village of Scarsdale, Westchester County; Village of South Floral Park, Nassau County; Village of Stamford, Delaware County; Village of Stewart Manor, Nassau County; Village of Sylvan Beach, Oneida County; Village of Watkins Glen, Schuyler County; Village of Wellsville, Allegany County; and

**IN ADDITION**, by virtue of the authority vested in me by Section 925-a of the Real Property Tax Law, I do hereby retroactively extend by twenty-one days the period for paying without interest or penalty the property taxes that were due by April 1, 2020, in the Village of Thomaston, Nassau County.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through July 2, 2020 the following:

- Section 6530 of the Education Law, or any section of the Public Health Law, to the extent necessary to allow a questionnaire administered through an asynchronous electronic interface or

electronic mail that is approved by a physician licensed in the State of New York to be sufficient to establish a practitioner-patient relationship for purposes of ordering a clinical laboratory test.

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through July 2, 2020:

- The directive contained in Executive Order 202.7, as extended, requiring all barbershops, hair salons, tattoo or piercing parlors and related personal care services to be closed to members of the public is hereby modified to allow for the opening of barbershops and hair salons, only to the extent and in regions consistent with Department of Health guidance promulgated for Phase Two industries reopening.
- The directive contained in Executive Order 202.32 allowing any licensee or franchisee of a racetrack to operate such racetrack is hereby modified and extended until July 2, 2020, to allow any operator of an auto racetrack to operate beginning June 3, 2020, pursuant to Department of Health guidance for such operation, and provided such auto racetrack allows only essential personnel or participants to be on site, and does not permit any visitor or spectator into the facility or on premise.
- Executive Order 202.35, which amended prior Executive Orders with respect to New York on Pause, is here by modified as follows:
  - Any region that meets the prescribed public health and safety metrics as determined by the Department of Health for Phase One reopening may allow outdoor, low-risk recreational activities and businesses providing such activities, as determined by Empire State Development Corporation, to be permitted to operate, in accordance with Department of Health guidance.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

second day of June in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.37

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, I hereby direct, for the period from the date of this Executive Order through July 5, 2020 the following:

Notwithstanding any prior Executive Order to the contrary, special education services and instruction required under Federal, state or local laws, rules, or regulations, may be provided in person for the summer term in school districts. Any district providing such services in person must follow State and Federal guidance.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this fifth

day of June in the year two thousand

twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.38

E X E C U T I V E   O R D E R

**Continuing Temporary Suspension and Modification of Laws Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE, I**, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202 and each successor Executive Order up to and including Executive Order 202.14, as continued as contained in Executive Order 202.27 and 202.28 until July 6, 2020; and

**IN ADDITION**, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through July 6, 2020:

- Consistent with Center for Disease Controls and Prevention and New York State Department of Health Guidance, commercial building owners, retail store owners and those authorized on their behalf to manage public places within their buildings and businesses (collectively "Operators") shall have the discretion to require individuals to undergo temperature checks prior to being allowed admittance. Further, Operators shall have the discretion to deny admittance to (i) any individual who refuses to undergo such a temperature check and (ii) any individual whose temperature is above that proscribed by New York State Department of Health Guidelines. No Operator shall be subject to a claim of violation of the covenant of quiet enjoyment, or frustration of purpose, solely due to their enforcement of this directive. This directive shall be applied in a manner consistent with the American with Disabilities Act and any provision of either New York State or New York City Human Rights Law.

- The directive contained in Executive Order 202.3, as extended, that required any restaurant or bar to cease serving patrons food or beverage on-premises, is hereby modified to the extent necessary to allow a restaurant or bar to serve patrons food or beverage on-premises only in outdoor space, provided such restaurant or bar is in compliance with Department of Health guidance promulgated for such activity.

- Executive Order 202.35 which continued the directive of Executive Order 202.33 is hereby modified to permit any non-essential gatherings for houses of worship at no greater than 25% of the indoor capacity of such location, provided it is in a geographic area in Phase 2 of re-opening, and further provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to.

**EXHIBIT A: Page 82 of 85**

- Upon the resumption of on-premises outdoor service of food and beverages at the licensed premises of restaurants and bars, to facilitate compliance with social distancing requirements in connection with such service, notwithstanding any provision of the Alcoholic Beverage Control law, restaurants or bars in the state of New York shall be permitted to expand the premises licensed by the State Liquor Authority to use (a) contiguous public space (for example, sidewalks or closed streets) and/or (b) otherwise unlicensed contiguous private space under the control of such restaurant or bar, subject to reasonable limitations and procedures set by the Chairman of the State Liquor Authority and, with respect to (a) the use of public space, subject to the reasonable approval of the local municipality, and all subject to the guidance promulgated by the Department of Health.



G I V E N   under my hand and the Privy Seal of the State in the City of Albany this sixth day of June in the year two thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.39

EXECUTIVE ORDER

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to temporarily suspend or modify any statute, local law, ordinance, order, rule, or regulation, or parts thereof, of any agency during a State disaster emergency, if compliance with such statute, local law, ordinance, order, rule, or regulation would prevent, hinder, or delay action necessary to cope with the disaster emergency or if necessary to assist or aid in coping with such disaster, do hereby continue the suspensions and modifications of law, and any directives, not superseded by a subsequent directive, made by Executive Order 202.15, through 202.21, and including 202.29, as contained in Executive Order 202.29 until July 7, 2020, and further, I hereby temporarily suspend or modify, for the period from the date of this Executive Order through July 7, 2020 the following:

- Sections 2018-a and 2018-b of the Education Law, to the extent necessary to allow any absentee ballot for an election held on June 9, 2020 and received by mail in the office of the clerk of the school district or designee of the trustees or school board not later than June 16, 2020 to be canvassed for such election. No ballots for such election shall be accepted by the clerk of the school district or designee of the trustees or school board after 5 p.m. on June 9, 2020 except those received by mail in accordance with this provision. Any receptacle used for hand delivery of absentee ballots in such election shall be closed and removed at 5 p.m. on June 9, 2020; The ballots therein shall remain unopened pending delivery of mailed ballots, and shall be removed and canvassed after 5 p.m. on June 16, 2020;

- Section 3012(d) of the Education Law and Subpart 30-3 of Title 8 of the NYCRR, to the extent necessary to exempt school districts from completing annual professional performance reviews of classroom teachers and building principals during the 2019-20 school year without withholding any apportionment of funds for the general support of public schools for which a school district is otherwise entitled; and

- Sections §§2509, 2573, 3012 and 3014 of the Education Law, to the extent necessary to allow a board of education or the trustees of a common school district, only upon specific agreement, to appoint on tenure those classroom teachers and building principals recommended by the superintendent of schools who are in the final year of the probationary period, have received the previous requisite annual professional performance review ratings pursuant to §3012-d of the education law and would have been in their discretion qualified for appointment on tenure based upon past performance, notwithstanding that their annual professional performance review had not been completed and they had not received the necessary effectiveness rating for the 2019-20 school

year, or to allow such board of education or trustees of a common school district to extend such determination for an additional year.

**IN ADDITION,** by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I do hereby issue the following directives for the period from the date of this Executive Order through July 7, 2020:

- The directive contained in Executive Order 202.38, that allowed a restaurant or bar to serve patrons food or beverage on-premises only in outdoor space, provided such restaurant or bar is in compliance with Department of Health guidance promulgated for such activity, is modified to explicitly limit such activity to those regions that are in Phase 2 of the re-opening. .

- The directive contained in Executive Order 202.4, as extended, that required local governments to allow non-essential personnel to be able to work from home or take leave without charging accruals, and required such number of non-essential personnel to total no less than 50% of the total number of employees across the entire workforce of such local government or political subdivision, is hereby modified to apply only to local governments that have not met the prescribed public health and safety metrics to be eligible for Phase Two reopening, provided such local governments in Phase Two regions may bring non-essential employees back to work beginning two weeks after such region meets the metrics to reopen Phase Two.



G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

seventh day of June in the year two

thousand twenty.

BY THE GOVERNOR

Secretary to the Governor



No. 202.42

<u>E X E C U T I V E   O R D E R</u>

**Continuing Temporary Suspension and Modification of Laws
Relating to the Disaster Emergency**

**WHEREAS**, on March 7, 2020, I issued Executive Order Number 202, declaring a State disaster emergency for the entire State of New York; and

**WHEREAS**, both travel-related cases and community contact transmission of COVID-19 have been documented in New York State and are expected to continue;

**NOW, THEREFORE**, I, Andrew M. Cuomo, Governor of the State of New York, by virtue of the authority vested in me by Section 29-a of Article 2-B of the Executive Law to issue any directive during a disaster emergency necessary to cope with the disaster, I hereby issue the following directives for the period from the date of this Executive Order through July 15, 2020:

- The directive contained in Executive Order 202.35, as extended and as amended by Executive Order 202.38, which amended the directive in Executive Order 202.10 that limited all non-essential gatherings to ten or fewer individuals, is hereby further modified to allow twenty-five (25) or fewer individuals, for any lawful purpose or reason, provided that the location of the gathering is in a region that has reached Phase 3 of the State's reopening, and social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to.

G I V E N   under my hand and the Privy Seal of the

State in the City of Albany this

fifteenth day of June in the year two

thousand twenty.



BY THE GOVERNOR

Secretary to the Governor