**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**BILL & TED'S RIVIERA, INC. and**
**PARTITION STREET PROJECT, LLC, on**
**behalf of themselves and all other similarly**
**situated individuals,**

                                                **Plaintiffs,**

                        **v.**                                           **1:20-CV-1001**
                                                                          **(FJS/TWD)**

**ANDREW M. CUOMO, LETITIA JAMES,**
**GREELEY T. FORD, EMPIRE STATE**
**DEVELOPMENT CORPORATION, and**
**NEW YORK STATE LIQUOR AUTHORITY,**

                                                **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**RUPP BAASE PFALZGRAF**                 **PHILLIP A. OSWALD, ESQ.**
**CUNNINGHAM LLC**                        **R. ANTHONY RUPP, III, ESQ.**
25 Walton Street
Saratoga Springs, New York 12866
             -and-
1600 Liberty Building
424 Main Street
Buffalo, New York 14202-3616
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**              **CHRISTOPHER LIBERATI-CONANT, ESQ.**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In their Verified Complaint, Plaintiffs assert a civil rights action pursuant to 42 U.S.C. § 1983 against Defendants seeking declaratory and injunctive relief for violations of their rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as a claim under Article 78 of New York Civil Practice Law and Rules, based on Defendants' promulgation and enforcement of certain Executive Orders.

Pending before the Court are Plaintiffs' motion for a preliminary injunction and class certification brought by Order to Show Cause, *see* Dkt. No. 2, and Defendants' cross-motion to dismiss for failure to state a claim, *see* Dkt. No. 12. The Court heard oral argument in support of and in opposition to these motions on September 11, 2020, and reserved decision. The following constitutes the Court's resolution of these motions. *See, generally*, Dkt. No. 1, Verified Complaint.

### II. BACKGROUND

On March 7, 2020, Defendant Cuomo issued Executive Order 202, which "declared a State Disaster Emergency for the State of New York based on the presence of travel-related cases and community transmission of COVID-19 having been documented in the State." *See id.* at ¶ 31. A number of Executive Orders followed. *See id.* at ¶¶ 35-47. For purposes of this case, a brief summary of the most relevant of these Executive Orders follows. On May 14, 2020, Executive Order 202.31 continued, until May 28, 2020, the "'postponement or cancellation of all non-essential gatherings of individuals of any size for any reason (e.g. parties, celebrations, games, meetings or other social events). . . .'" *See id.* at ¶ 39 (quoting [Exhibit "A"] at 70). On

May 28, 2020, pursuant to Executive Order 202.34, Defendant Cuomo continued the "'required postponement, cancellation, or restriction on size of all non-essential gatherings of more than ten individuals[.]'"  *See id.* at ¶ 43 (quoting [Exhibit "A"] at 76).  On June 15, 2020, pursuant to Executive Order 202.42, Defendant Cuomo relaxed the ban on "non-essential gatherings" pursuant to Executive Order 202.10 to "'allow twenty-five (25) or fewer individuals, for any lawful purpose or reason, provided that the location of the gathering is in a region that has reached Phase 3 of the State's reopening, and social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to.'"  *See id.* at ¶ 46 (quoting [Exhibit "A"] at 87).  Finally, Executive Order 202.45, issued on June 26, 2020, modified previous orders and "'[allowed] gatherings of fifty (50) or fewer individuals for any lawful purpose or reason, so long as any such gatherings occurring indoors do not exceed 50% of the maximum occupancy for a particular indoor area, and provided that the location of the gathering is in a region that has reached Phase 4 of the State's reopening, and provided further that social distancing, face covering, and cleaning and disinfection protocols required by the Department of Health are adhered to.'"  *See id.* at ¶ 47 (quoting [Exhibit "A" at 87])

Notwithstanding these restrictions, Plaintiffs allege that Defendants "have created thousands of exceptions to the 50-person limit by allowing restaurants -- including those operated by the proposed class members -- to host members of the general public for dinner service at 50% of their regular maximum capacity."  *See id.* at ¶ 54.  Furthermore, Plaintiffs argue that "Defendants have . . . enforced the 50-person limitation on weddings despite the fact that attendees at a wedding are obligated to follow the same social-distancing and hygiene rules and standards as attendees at a restaurant for dinner service as detailed in the Interim Guidance."  *See id.* at ¶ 57 (citing Ex. C).  Plaintiffs assert that they and the proposed class members "are

deprived of equal protection under the Fourteenth Amendment to the United States Constitution" because Defendants prohibit them "from hosting weddings in excess of 50 people, while restaurant service under the same circumstances and at the same locations -- as well as at other similarly situated locations -- are permitted to seat more than 50 people for dining in a manner that is deemed safe by the State of New York" as long as they do not exceed 50% of the maximum capacity of that venue. *See id.* at ¶ 59.

Specifically, Plaintiffs state that, as applied to Plaintiff Riviera, which has a regular maximum capacity of 353 people, the rules that Defendants have promulgated for food service facilities permit it "to provide restaurant service for up to 176 people at one sitting. However, under the same rules, Riviera is prohibited from hosting a wedding dinner in excess of fifty people[.]" *See id.* at ¶¶ 14, 62. Furthermore, with regard to Plaintiff Partition Street, its Diamond Mills facility "consists of a ballroom with regular maximum capacity of 400 people and a tavern with regular maximum capacity of 176 people." *See id.* at ¶ 15. Under Defendants' rules for food service facilities, "Partition Street is able to provide restaurant service in the ballroom for 200 people and in the tavern for 88 people. However, under the same rules, Partition Street is prohibited from hosting a wedding gathering in excess of fifty people[.]" *See id.* at ¶ 65.

Plaintiffs argue that "[t]here is no rational basis to justify the disparate treatment of restaurant service and wedding gatherings[,]" s*ee id.* at ¶ 71, and that "Defendants' severe restriction of wedding gatherings, while permitting numerous other gatherings unrestricted as to size, is not rationally related to any legitimate state interest and thus cannot survive rational basis analysis under the Equal Protection Clause[,]" s*ee id.* at ¶ 72. Therefore, Plaintiff's assert that this Court should issue a preliminary injunction and certify the proposed class.

## III. DISCUSSION

**A.     Plaintiffs' motion for a preliminary injunction**

"'The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties.'" *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37-38 (2d Cir. 2018) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981)).  "A preliminary injunction is an 'extraordinary and drastic remedy' . . .; it is never awarded as of right[.] . . ." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal citations omitted).  Generally, a plaintiff who seeks "injunctive relief [that] would 'affect government action taken in the public interest pursuant to a statute or regulatory scheme, . . . must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction.'" *Murray v. Cuomo*, No. 1:20-cv-03571-MKV, 2020 WL 2521449, *8 (S.D.N.Y. May 18, 2020) (quoting *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (citing *Red Earth LLC v. U.S.*, 657 F.3d 138, 143 (2d Cir. 2011))).

In a case such as this one, however, in which Plaintiffs seek "a mandatory injunction against the government that would change the status quo existing when the case was filed . . . [they are] subject to a heightened standard.  Namely, [they] must show 'a "clear" or "substantial" likelihood of success on the merits.'" *Id.* (quotation omitted).  "Requiring such a heightened showing is consistent with the principle that 'governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.'" *Luke's Catering*

*Serv., LLC v. Cuomo*, No. 20-CV-1086S, 2020 WL 5425008, \*5 (W.D.N.Y. Sept. 10, 2020)

(quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995)).

As a first step, the Court will address whether Plaintiffs have demonstrated a clear or

substantial likelihood of success on the merits of their Equal Protection claim.

Among the powers reserved to the States under the Tenth Amendment is the State's

police power, which includes the power and authority "reasonably necessary to 'guard and

protect' public health and public safety, including protecting communities 'against an epidemic of

disease which threatens the safety of its members.'"  *Luke's Catering Serv., LLC*, 2020 WL

5425008, at \*6 (quoting [*Jacobson*, 197 U.S.] at 27, 38) (other citation omitted).  In *Jacobson v.*

*Massachusetts,* 197 U.S. 11 (1905), the Supreme Court defined the police powers of the State

very broadly, holding that "the rights of the individual in respect of his liberty may at times,

under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable

regulations, as the safety of the general public may demand."  *Id.* at 29.

Recognizing the rapidly-changing landscape in which we find ourselves as a result of the

current health crisis, Chief Justice Roberts recently explained that the decision as to when to lift

restrictions on particular social activities during a pandemic such as we face with COVID-19 is

ever-changing and subject to reasonable disagreement.  *See S. Bay United Pentecostal Church v.*

*Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J. concurring).  However, our Constitution

entrusts those decisions which affect the health and safety of citizens to state officials who are

politically accountable to those who elected them, particularly when those decisions are

undertaken in situations that are fraught with medical and scientific uncertainty.  *See id.*

(quotations omitted).  Unless those officials exceed these broad limits, the federal courts, which

do not have the background, competence or expertise to gauge public health and are not

accountable to the people, should not second guess their decisions.  *See id.* at 1613-14 (citing *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 545, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985)).

 The State's police power, of course, is not absolute.  Where elected officials employ the state's police power in an arbitrary or oppressive manner, the courts may interfere.  *See Jacobson*, 97 U.S. at 38.  Under the highly deferential *Jacobson* standard, however, a court's review is limited to determining whether "'a statute purporting to have been enacted to protect the public health . . . or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain palpable invasion of rights secured by the fundamental law.'"  *Luke's Catering Serv., LLC*, 2020 WL 5425008, at *6 (quoting *Jacobson*, 197 U.S. at 28, 31 (citations omitted)); *DiMartile v. Cuomo*, No. 1:20-CV-0859 (GTS/CFH), 2020 WL 4558711, *8 (N.D.N.Y. Aug. 7, 2020) (discussing the effect of *Jacobson* in the context of the COVID-19 pandemic).  Such review includes "asking whether power has been exercised in an 'arbitrary, unreasonable manner,' [*Jacobson*, 197 U.S.] at 28, 25 S. Ct. 358, or through 'arbitrary and oppressive' regulations, *id.* at 38, 25 S. Ct. 358."  *In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) (citation omitted).  "This limited review, however, does not permit courts to pass judgment on the 'wisdom and efficacy' of the emergency measures implemented."  *Luke's Catering Serv., LLC*, 2020 WL 5425008, at *6 (citing *In re Abbott*, 954 F.3d at 783).  Thus, under this limited review, "no court . . . is justified in disregarding the action of the legislature simply because in its . . . opinion that particular method was -- perhaps, or possibly -- not the best[.]"  *Jacobson*, 197 U.S. at 35.

 There can be little doubt that "[States] . . . ha[ve] a compelling interest in combating the spread of COVID-19 and protecting the health of [their] citizens."  *S. Bay United Pentecostal*

*Church*, 140 S. Ct. at 1614 (Kavanaugh, J., dissenting from denial of application for injunctive relief).  There is also no dispute that Defendant Cuomo issued the Executive Orders at issue pursuant to New York Executive Law 29-a, which was amended specifically "'to allow for the protection of the health and safety of New Yorkers due to the threat of the novel coronavirus.'" *Luke's Catering Serv., LLC*, 2020 WL 5425008, at *7 (quotation omitted).  Therefore, the Court concludes that, when promulgating and enforcing the challenged Executive Orders, Defendants were acting within their police power to protect the public health and safety and that, concomitantly, the measures they took are subject to *Jacobson* review.  *See, e.g., id*; *DiMartile*, 2020 WL 4558711, at *9.

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985) (citation omitted).  Furthermore, "the equal protection guarantee . . . extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials."  *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citation omitted).  A plaintiff who is not a member of a constitutionally protected class, "' may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) "class of one."'"  *AYDM Assocs., LLC v. Town of Pamelia*, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (quotation omitted).

In this case, Plaintiffs bring their equal protection claim under a class-of-one theory.  To succeed under this theory, a plaintiff must establish that he was "intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'"  *Id.* at 268 (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)) (other citation omitted).  Moreover, "class-of-one plaintiffs 'must show an

extremely high degree of similarity between themselves and the persons [with] whom they compare themselves."  *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted).  However, under the class-of-one theory, a plaintiff is not required to prove "a defendant's subjective ill-will towards" him; he can prevail on a class-of-one claim based on similarity alone.  *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019).

As the Second Circuit recently noted in *Hu*, the court set forth its similarity standard for a class-of-one cause of action in *Neilson v. D'Angelis*, 409 F.3d 100 (2d Cir. 2005).  *See Hu*, 927 F.3d at 92.  Specifically, in *Neilson*, the Second Circuit "held that, '[i]n order to succeed on a "class of one" claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high.'"  *Id.* (quoting *Neilson*, 409 F.3d at 104).

> More precisely, a plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake."

*Id.* (quoting [*Neilson*, 409 F.3d] at 105).

In this case, Plaintiffs contend that they meet the high standard of similarity because the comparators are their own venues when they function as restaurants and other restaurants, *see* Dkt. No. 2-2 at 10,[1] and argue further that there is no rational basis for the difference in treatment when they host patrons for an ordinary dining experience versus when they host wedding guests who want to dine at the same restaurant and participate in the same activity, *i.e.*,

---

[1] All references to page numbers to documents in the record are to the page numbers that the Court's Electronic Filing System generates and appear in the upper right corner of each page.

dining.  *See id.*  Plaintiffs argue that this arbitrary distinction lacks a rational basis and, thus, is a

denial of equal protection of the laws in the most literal sense.  *See id.* at 11-12.

New York's Commissioner of Health counters that "there are many important differences

between wedding celebrations and ordinary restaurant dining, and those differences are highly

significant from a public health perspective."  *See* Dkt. No. 12-4, Declaration of Howard A.

Zucker ("Zucker Decl."), at ¶ 8.  For example, Commissioner Zucker notes that, "[a]t a

restaurant, parties come and go at different times, they dine separately from one another, and

they spend, perhaps, an hour or two at a meal," whereas, "[a]t a wedding or other celebratory

event, guests arrive and leave at roughly the same time, they do so for the very purpose of

celebrating together, making mingling among guests expected and inevitable, and they usually

spend far more time in the event space than patrons typically spend dining in a restaurant."  *See*

*id.*  Commissioner Zucker explains that these differences have a significant effect on the

probable transmission of the COVID-19 virus.  *See id.*

In addition, Commissioner Zucker explains that "[t]he number of people in a room is not .

. . the sole determinant of the risk of transmission."  *See id.* at ¶ 13.  The risk is much higher

when people arrive and leave at the same time and spend long hours together with the inevitable

mingling and direct interaction between those in attendance for a celebratory purpose, such as a

wedding.  *See id.*

Furthermore, Commissioner Zucker explains that, in deciding to gradually reopen the

State's economy, the COVID-19 Task Force's goal was  to balance the needs of each industry

with the health and safety interests of business owners, their employees and customers and the

public at large, "a primary feature of which is to avoid congregating and mingling of people --

and groups of people *anywhere* and promote appropriate social distancing of at least six feet

between individuals *everywhere*." *See id.* at ¶ 41.

Finally, Commissioner Zucker notes that wedding venues are treated the same as other

businesses, such as museums and bowling alleys, which may in addition to their primary

operations and core activities also host wedding receptions or birthday parties.  When those

businesses host such events, they "may not accommodate a social gathering of more than 50

individuals." *See id.* at ¶ 56; *see also* Dkt. No. 12-3, Declaration of Adrienne V. Mazeau

("Mazeau Decl."), at ¶ 70.

Although Defendants' arguments appear at first blush to suggest  a discriminatory policy,

a closer analysis of the rational basis for the difference in treatment suggests otherwise.  As New

York's Commissioner of Health points out, there are rational arguments from which one can

conclude that sufficient differences exist between a venue that hosts the general public for dining

and one that hosts a special social gathering such as a wedding to support the application of

different restrictions.

Furthermore,  Judge Skretny recently discussed in *Luke's Catering Serv., LLC*, New York

is not required to respond to COVID-19 in any particular way[2] and scientific experts may differ

about how best to prevent the transmission of the virus.  *See Luke's Catering Serv., LLC,* 2020

WL 5425008, at *8 (quoting *S. Bay United Pentecostal Church*, 140 S. Ct. at 1613).  Thus, "[t]he

State's chosen response is . . . entitled to deference." *Id.* (citing *Jacobson*, 197 U.S. at 30 ("It is

no part of the function of a court or a jury to determine which one of two modes was likely to be

---

[2] For example, New York might react differently and impose different restrictions on social
gatherings or on particular industries than other states for various reasons, including that the
incidence of the virus may differ from state to state as may the density of population or other
circumstances that are particular to some states and not others.

most effective for the protection of the public against disease . . . That [is] for the [State] to determine in the light of all the information it had or could obtain.")) (other citation omitted).

It may very well be, as Plaintiffs suggest, that Executive Order 202.45 and the regulations and restrictions it places on venues that host social gatherings vis a vis restaurants could have been more equitable, but this is not the test that the Court must apply when reviewing Defendants' decision.  *See Jacobson*, 197 U.S. at 35.  As Chief Justice Roberts explained in *S. Bay United Pentecostal Church,* the question of when restrictions on particular social activities should be lifted during a health crisis, such as the one we currently face, are subject to reasonable disagreement.  *See id.* at 1613. However, our Constitution entrusts those decisions about the safety and health of the people to their elected officials; and those decisions, unless arbitrary and irrational should not be subject to second guessing by unelected judges who are not accountable to the people and do not have the background, competence, and expertise to assess public health. *See id.* at 1614.

Based on the record in this case, the Court cannot conclude that the restrictions that Defendants have implemented in Executive Order 202.45 and the rules and regulations that implement that Executive Order are arbitrary or oppressive or bear no substantial relationship to the public safety concerns, *i.e.*, the spread of COVID-19, that they are intended to address. Therefore, the Court concludes that Plaintiffs have failed to demonstrate a clear or substantial likelihood of success on the merits of their Equal Protection claim.  Accordingly, the Court denies their motion for a preliminary injunction.[3]

---

[3] Since Plaintiffs have failed to demonstrate the first requirement for imposition of a preliminary injunction, the Court need not address the other requirements.

**B.      Plaintiffs' motion for class certification**

In their Verified Complaint, Plaintiffs assert that they are bringing this action pursuant to

Rule 23(a) and Rule 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves

and a proposed class, which they define as follows:

> All restaurant, banquet, catering, and dining facilities in New York
> State with a maximum occupancy greater than 100 that follow the
> "Interim Guidance for Food Services During the COVID-19 Public
> Health Emergency," yet are prohibited from hosting wedding
> dinners for more than 50 individuals under Executive Order
> 202.45.

*See* Verified Complaint at ¶ 25.[4]

Plaintiffs assert that the proposed class satisfies the requirements of both Rule 23(a) and

Rule 23(b) of the Federal Rules of Civil Procedure and that class certification is essential to the

fair and efficient adjudication of this action.  *See* Dkt. No. 2-2 at 22.[5]

To the contrary, Defendants argue that Plaintiffs have not submitted any evidence that

tends to demonstrate numerosity, commonality, or typicality; and, therefore, the Court should

deny Plaintiffs' motion for class certification.  *See* Dkt. No. 12-1 at 29.  Alternatively,

Defendants assert that "class certification is unnecessary at this time, and would be, at best

premature under the circumstances."  *See id.* (citing *Ruggles v. Wellpoint, Inc.*, 253 F.R.D. 61, 66

(N.D.N.Y. 2008)).

---

[4] In response to the Court's question at oral argument, Plaintiffs' counsel clarified that Plaintiffs
were aware that the indoor dining limitation in New York City was 25% of capacity, rather than
the 50% of capacity in other parts of the State, and were not challenging that fact and would
abide by that rule.

[5] Plaintiffs request that, if the Court finds that there are issues of fact material to their request for
certification, the Court offer them the opportunity for an evidentiary hearing to resolve those
issues.  *See* Dkt. No. 2-2 at 26 (citation omitted).

"A district court enjoys broad discretion when it comes to resolving questions of class certification because it 'is often in the best position to assess the propriety of the class and has the ability, . . ., to alter or modify the class, create subclasses, and decertify the class whenever warranted.'" *V.W. by and through Williams v. Conway*, 236 F. Supp. 3d 554, 572 (N.D.N.Y. 2017) (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (collecting cases)). Furthermore, when "evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010) (quoting *In re IPO*, 471 F.3d at 41).

Rule 23 sets forth four requirements for class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"A party seeking class certification must affirmatively demonstrate [its] compliance with the Rule[.]" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Furthermore, "[t]o certify a class seeking injunctive relief under Rule 23(b)(2), Plaintiffs must also show Defendants have 'acted or refused to act on grounds that apply generally to the class, so that final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole.'" *J.B. v. Onondaga Cnty.*, 401 F. Supp. 3d 320, 330 (N.D.N.Y. 2019) (quoting *Brown*, 609 F.3d at 476 (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier*

*Inc.*, 546 F.3d 196, 202 (2d Cir. 2008))).  A plaintiff "must establish each of these facts by at least a preponderance of the evidence."  *Id.*

Although Plaintiffs provide legal argument to support their motion for class certification, they have not provided specific information from which the Court can properly assess whether, in fact, class certification is appropriate in this case.  Therefore, the Court denies Plaintiffs' motion for class certification without prejudice and with leave to renew.  If Plaintiffs decide to renew their motion, they must provide detailed evidence, in the form of affidavits and other documentation, to support their claim that they have satisfied all of the requirements for class certification under Rule 23(a) and (b)(2).  In addition, Plaintiffs shall provide the Court with a proposed, detailed definition of the proposed class and a proposed class certification order.

## C.     Defendants' cross-motion to dismiss for failure to state a claim

The basis for Defendants' cross-motion to dismiss is three-fold.  First, they assert that Plaintiffs' complaint fails to state a claim for violation of the Equal Protection Clause under a class-of-one theory; and, therefore, the Court should dismiss that claim.  *See* Dkt. No. 12-1 at 20-22.

Second, with regard to Plaintiffs' claim under Article 78, Defendants contend that "[m]ultiple New York courts have found that the federal court does not have subject matter jurisdiction to hear a claim under . . . Article 78."  *See* Dkt. No. 12-1 at 25 (citing *Cartagena v. City of N.Y.*, 257 F. Supp. 2d 708 (S.D.N.Y. 2003)).  Moreover, they claim that, although the Second Circuit has not provided a definitive answer, "'New York federal district courts routinely decline to exercise supplemental jurisdiction over "Article 78 claims."'"  *See id.* (quoting *Nitti v. Cnty. of Tioga*, No. 3:14-CV-0954 (GTS/DEP), 2015 U.S. Dist. LEXIS 130685, at *20

(N.D.N.Y. Sept. 28, 2015)) (citing *Bens Bbq v. Cnty. of Suffolk*, No. 19-CV-3584 (SJF) (ARL),

2020 U.S. Dist. LEXIS 119878 (E.D.N.Y. July 7, 2020) (collecting cases)).  In fact, according to

Defendants, "'district courts *are* unanimous that "[t]he very nature of an Article 78 proceeding

presents . . . compelling reasons" for declining to exercise supplemental jurisdiction, even

assuming it exists.'"  *See id.* (quoting *Singh v. Joshi*, 201 F. Supp. 3d 245, 250 (E.D.N.Y. 2016)

(emphasis and alterations in original)).  Therefore, Defendants argue that the Court should

decline to exercise supplemental jurisdiction over and dismiss Plaintiffs' Article 78 claim.  *See

id.* at 26.

Third, Defendants argue that the Court should dismiss the complaint against Defendants

Attorney General James, Greeley T. Ford, Empire State Development Corporation and New

York State Liquor Authority because Plaintiffs assert no allegations against these Defendants in

their complaint.  *See id.* at 26 (quoting *Mitchell v. Macy's, Inc.*, 2018 U.S. Dist. LEXIS 165613,

at *16 (S.D.N.Y. Sep. 25, 2018) (stating that "[w]hen a complaint names defendants in the

caption but makes no substantive allegations against them in the body of the pleading, the

complaint does not state a claim against these defendants")).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure "challenges only the 'legal feasibility' of a complaint."  *Goel v. Bunge,

Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New

York*, 458 F.3d 150, 155 (2d Cir. 2006)).  "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'"  *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550

U.S.] at 570, 127 S. Ct. 1955).  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

Thus, to withstand Defendants' motion to dismiss their equal protection claim, all that Plaintiffs are required to do is allege sufficient facts – all of which the Court must accept as true – to state a claim for relief that is plausible on its face. Plaintiffs have met that standard. They have alleged sufficient facts to state a plausible claim that Defendants have treated them differently than they have treated similarly-situated establishments. In this regard, Plaintiffs assert that the challenged executive orders and regulations "treat each proposed class member differently based solely on whether they are serving dinner to members of the general public or to people who have gathered in relation to a marriage, even though these two groups of people are abiding by the same social-distancing and hygiene rules." *See* Dkt. No. 1, Verified Complaint, at ¶ 69. Furthermore, they assert that "[t]he degree of similarity between a given class member serving dinner to members of the public and serving dinner to people gathered in

relation to a marriage is extremely high as both events are occurring in the same location within the same venue, and with the same social-distancing and hygiene protocols in effect.  In this way, the ideal comparator of each Plaintiff hosting a wedding is the same Plaintiff hosting restaurant service."  *See id.* at 70.

Ultimately, Plaintiffs may not prevail on their equal protection claim; but, to withstand a motion to dismiss, Plaintiffs are not required to demonstrate that they will prevail.  What the Court must determine is whether Plaintiffs' equal protection claim is legally feasible, accepting as true all of Plaintiffs' well-pleaded allegations, and with no consideration of any defenses or contrary allegations that Defendants may raise.  Based on the factual allegations in Plaintiffs' Verified Complaint, the Court finds that they have stated a legally sufficient equal protection claim and, therefore, denies Defendants' motion to dismiss that claim.

With regard to Plaintiffs' Article 78 claim, there is no need for the Court to consider whether to exercise its supplemental jurisdiction over that claim at this time.  If, at some point during this litigation, the Court dismisses Plaintiffs' equal protection claim, then, at that time, the Court can decide, in its discretion, whether to "decline to exercise [its] supplemental jurisdiction over" their Article 78 claim because the court "has dismissed all claims over which it has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  Therefore, the Court denies Defendants' motion to dismiss Plaintiffs' Article 78 claim.

With regard to Defendants' motion to dismiss Plaintiffs' claims against Defendants James, Ford, Empire State Development Corporation and New York State Liquor Authority, the Court notes, as an initial matter, that Defendant New York State Liquor Authority, "as an agency of the State of New York, is not a suable entity."  *333 E. 60th Street, Inc. v. N. Y. State Liquor Auth.*, No. 08 Civ. 4147 (RJS), 2008 WL 4104012, *3 (S.D.N.Y. Aug. 29, 2008) (citing *Rolle v. New*

*York State Liquor Authority*, No. 05 Civ. 3536(TPG), 2006 WL 2254807, at *3 (S.D.N.Y. Aug. 7, 2006) ("Defendant, the New York State Liquor Authority, is an agency of the State of New York, and is therefore shielded from federal suits by the Eleventh Amendment."); *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[A] plaintiff may sue *a state official* acting in his official capacity – notwithstanding the Eleventh Amendment – for prospective, injunctive relief from violations of federal law.") (emphasis added)).  Therefore, the Court grants Defendants' motion to dismiss Plaintiffs' complaint against Defendant New York State Liquor Authority.

According to Plaintiffs' Verified Complaint, Defendant James, who is the Attorney General of the State of New York, is sued in her official capacity, s*ee* Dkt. No. 1 at ¶ 17; "Defendant Ford was and is the Commissioner of the New York State Liquor Authority and was and is acting under color of state law, and in his official capacity, at all relevant times," *see id.* at ¶ 18;[6] and "Defendant Empire State Development Corporation ("ESD") is a New York State Public Benefit Corporation," *see id.* at ¶ 19.[7]

Although Plaintiffs are correct that "collective" pleading is permissible, at least under some circumstances, a complaint must, nevertheless, "contain[] . . . allegations indicating how the defendant violated the law or injured the plaintiff[.]"  *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981).  Furthermore, although "[t]he Federal Rules, as illustrated by Rule 8(a), do not require that plaintiff set out a defendant's precise role in the injurious conduct . . . [i]t is,

---

[6] Plaintiffs do not indicate whether they are suing Defendant Ford in his official capacity, individual capacity or both, *see id.* at ¶ 18.  However, given the relief that Plaintiffs seek, the Court assumes that Plaintiffs are suing Defendant Ford in his official capacity only.

[7] Unlike the New York State Liquor Authority, Defendant Empire State Development Corporation is not a state agency.

however, constitutionally imperative that defendants are put on notice as to the nature of the allegations against them." *Messina v. Mazzeo*, 854 F. Supp. 116, 126 (E.D.N.Y. 1994).

Plaintiffs' allegations against these Defendants are sparse and lack specificity. Nonetheless, the Court finds that these allegations are sufficient to put Defendants on notice as to the claims against them.  Accordingly, the Court denies Defendants' motion to dismiss Plaintiffs' claims against Defendants James, Ford, and Empire State Development Corporation.


## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for a preliminary injunction, *see* Dkt. No. 2, is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' motion for class certification, *see* Dkt. No. 2, is **DENIED without prejudice and with leave to renew**; and the Court further

**ORDERS** that Defendants' cross-motion to dismiss Plaintiffs' complaint, *see* Dkt. No. 12, is **GRANTED** insofar as it seeks the dismissal of Plaintiffs' complaint against Defendant New York State Liquor Authority and is **DENIED in all other respects.**

**IT IS SO ORDERED.**

Dated: October 13, 2020
      Syracuse, New York

                                       _____
                                      Frederick J. Scullin, Jr.
                                      Senior United States District Judge